STATE v. HAYES.

(Filed April 25, 1905.)

*Rape—Collateral Writing—Cross Examination as to Contents of Letter.*

In an indictment for rape, the prisoner had a right to cross-examine the prosecutrix as to the contents of a letter written by her to him after the alleged rape, for the purpose of showing that the sexual relations between them were voluntary on her part; the prisoner was not required to offer the letter itself as evidence (although at the time in the hands of his counsel), it being collateral to the matter at issue.

INDICTMENT for rape against C. E. Hayes, tried by *Judge George W. Ward* and a jury, at the November Term, 1904, of the Superior Court of ROBESON County. The prisoner was convicted of the crime of rape upon the person of one Mary Inman, and from the sentence of death pronounced by the court, appealed.

*Robert D. Gilmer, Attorney-General,* for the State.
*John D. Shaw, Jr.,* and *R. E. Lee* for the prisoner.

BROWN, J. The prosecutrix, Mary Inman, was examined as a witness for the State and said in substance that the alleged asault occurred at her mother's house on Thursday, June 30, 1904; that at the time the prisoner came to her mother's house and saw the prosecutrix in the parlor; that he shut the door and locked it; and after giving all the details, prosecutrix states that the prisoner forced her, while standing up, to have sexual intercourse with him. On cross-examination she stated that she made no outcry because she was afraid the prisoner would kill her, as he was armed with a pistol and threatened to use it. The prosecutrix further testified that she went to church on Sunday night; that she saw

the prisoner and he handed her a note. She states that she did not read the note, but stuck it in her belt and kept it there during the service, then put it in her bureau drawer; afterwards tried to read it; could not do it, and tore it up; that she got another note from prisoner on Monday morning and wrote him a letter on Tuesday. She further states that she told the prisoner in this note, which she wrote him on Tuesday morning, that "if I would deliver myself up to him for five minutes he had promised to let me alone." "I told him in the note that I trusted him and expected him to keep his promise." Prosecutrix admits that she ate a watermelon with the prisoner on Monday afternoon. She testified on cross-examination that while eating the watermelon, prisoner asked her to have intercourse with him again. "I said I would have to ask my mother, and he proposed that we ask her together." Prosecutrix further says that on Monday night she went out to the kitchen and had sexual intercourse with the prisoner, and that her mother knew that she was in the kitchen with him. She also states that she had intercourse again with the prisoner on Wednesday night and that her mother knew she was in the kitchen with him on that night. The prosecutrix claims, however, that these several acts of intercourse succeeding the first were brought about by fear of the prisoner and by threats, intimidation and force on his part. Upon cross-examination prisoner's counsel asked the witness the following question: "Did you not, in your letter of Tuesday, say to Hayes that you could not see him again?" State objected. The objection was sustained, and prisoner excepted. It is stated in the case that this letter of Tuesday, which the prosecutrix wrote the prisoner, was then in court and in the hands of the prisoner's counsel at the time the question was asked. The prisoner's counsel was doubtless attempting to bring out the whole of the contents of the letter.

In refusing to admit this testimony, we think His Honor

committed error. The prisoner had a right to cross-examine the prosecutrix as to the contents of this letter. The letter was purely collateral to the matter at issue before the court, and it did not require that the letter should be introduced as the only legal evidence of its contents. Inasmuch as it was written by the prosecutrix herself, it was competent to draw out of her personally all the contents of that letter for the purpose of showing that the sexual relations between her and the prisoner were voluntary on her part and were not brought about by fear and the overpowering intimidation of the prisoner. The prisoner would not be required to offer the letter itself as evidence, if he could elicit the facts therein from the State's witness. We can easily see that it would be a perfectly legitimate and very effective method of getting before the jury the facts alleged to have been contained in the letter of prosecutrix by drawing them out of the prosecutrix herself on cross-examination. *State v. Ferguson,* 107 N. C., 841.

Upon a careful consideration of all the testimony in this case, while it may be possibly sufficient to be submitted to the jury, we cannot refrain from expressing the hope that upon another trial, inasmuch as the prisoner's life is at stake, the State will be able to strengthen the case made out on the first trial, if a verdict of guilty of a capital felony should be insisted upon by the solicitor.

In this connection we will call attention to the language of *Sir Matthew Hale,* in his Pleas of the Crown, vol. 1, page 633: "It is true, rape is a most detestable crime, and therefore ought severely and impartially to be punished with death, but it must be remembered that it is an accusation easy to be made, hard to be proved, but harder to be defended by the party accused, though never so innocent." He then gives account of two trials for rape which took place before him at the Suffolk Assizes, and says: "I only mention these instances that we may be the more cautious upon trials of offenses of this nature, wherein the court and jury may with

so much ease be imposed upon without great care and vigilance, the heinousness of the offense many times transporting the judge and jury with so much indignation that they are over hastily carried on to the conviction of the person accused thereof by the confident testimony of sometimes false and malicious witnesses."

New Trial.