# EADS v. STATE.

CRIMINAL LAW—APPEAL AND ERROR—MISCONDUCT OF COUNSEL—RE-
VIEW—ATTEMPTED SUPPRESSION OF EVIDENCE—WITNESSES—CONSUL-
TATION WITH COUNSEL—EVIDENCE—ADMISSIBILITY—CROSS-EXAM-
INATION—FORMER MISCONDUCT OF WITNESS—WHEN ADMISSIBLE
ON CROSS-EXAMINATION—HARMLESS ERROR.

1. Alleged misconduct of the prosecuting attorney in asking the defendant upon cross-examination an irrelevant question for the purpose of prejudicing him before the jury

cannot be considered on error, in the absence of objection and an exception taken at the time to an adverse ruling. Objection first made after verdict by motion for new trial is too late.

2. An exception to alleged misconduct of the prosecuting attorney in the manner of examining witnesses is not of itself sufficient, without an objection tendered at the time, to preserve the question for review.

3. On the trial of a defendant for stealing a horse it is proper for the prosecution to show an attempt on his part to keep the horse claimed to be the animal stolen out of the jurisdiction of the court so as to interfere with its identification, as the jury might, from the fact of such attempt, properly infer a consciousness of guilt.

4. Any attempt by one charged with the larceny of a horse to prevent the animal claimed by the prosecution to have been stolen from being seen and inspected at the time of trial by witnesses who had theretofore known the horse is ·proper to go to the jury as bearing on the question of guilt.

5. Where, upon the trial of a defendant charged with the larceny of a horse, the question of his guilt depended upon the identification as the animal alleged to have been stolen of a horse sold by the defendant and shipped by the purchaser to another state, it was not error to permit the prosecution upon cross-examination of the defendant to inquire whether he knew that his attorney had wired to have the horse attached so that it could not be returned to this state, and the question was not objectionable as improperly calling for the contents of a telegram.

6. It is the right and duty of an attorney regularly retained in a case to see his client's witnesses and ascertain their knowledge about the controversy, and it is only when it is sought to show an actual fraudulent conference, an attempt to corrupt or to influence a witness to color his testimony, to testify falsely, to avoid service of process, or to do anything tending to defeat justice, that what occurs between an attorney and his client's witnesses becomes material.

7. A witness for defendant upon a criminal prosecution was without objection asked by counsel for the State whether he had talked about the matter testified to by him with defendant's attorneys, and he answered that he had. Upon re-direct examination he was asked whether he had stated to defendant's counsel the fact to which he had testified,

or whether they had suggested it to him, to which question and also an offer to show that the statement of the witness to counsel had been made without suggestion on the part of the latter, objections were sustained. *Held,* on error, that it could not be assumed that the jury were misled or the defendant prejudiced by the question propounded by the State and answered without objection, as the jury had no right to infer therefrom an improper coaching of the witness or the manufacture of evidence; but that if the defendant had thought the jury would be so misled he could have obviated the matter by a request for a proper instruction covering the matter.

8. Upon cross-examination within proper limits, inquiry may be made as to specific instances of recent but not remote misconduct of a witness for the purpose of affecting his credibility, the rights and limits of such cross-examination, when relevant, resting largely in the discretion of the trial court, but in such case the answers of the witness preclude further inquiry so that extrinsic evidence of such collateral matter is not permissible.

9. For the purpose of affecting the credibility of a witness the fact of recent misconduct on his part is a matter of legitimate inquiry upon cross-examination, within the limits of a sound discretion of the trial court, but not what the state or others may have done in the way of mere accusations against, or arrest of, the witness.

10. The previous arrest of a witness for a stated offense constituting a mere accusation, an objection was properly sustained to a question and offer on cross-examination seeking to show the fact of such arrest.

11. After objections had been sustained to questions and offers seeking to show on cross-examination the fact that the witness had been arrested at a stated time for shooting a man in a house of prostitution, he was asked if he had been arrested at the same time for carrying concealed weapons and convicted in justice court; objection thereto being sustained, counsel propounding the question offered to prove on cross-examination of the witness that he was convicted in justice court, for the offense of carrying concealed weapons, and growing out of the transaction of shooting in a house of prostitution mentioned in a preceding question. *Held,* (1) that "growing out of a transaction" does not necessarily mean a part of it either in point of time or place as to a subsequent act, and, that, as to the

last part of the offer, no act of the witness was referred to, since the preceding question upon the subject referred only to his arrest, and hence as to that part of the offer an objection was properly sustained.

12. Where it is sought to show by cross-examination of a witness previous misconduct on his part, the evidence, to be competent and relevant to discredit the witness, should at least tend to prove moral turpitude or a lack of veracity.

13. The crime of carrying concealed weapons does not impute either moral turpitude or a lack of veracity, and hence, though proof upon cross-examination of the conviction of a witness for such crime might have been technically admissible, its rejection was not prejudicial even if erroneous.

14. Error, to authorize the reversal of a judgment, must be material and prejudicial.

[Decided May 22, 1909.]                    (101 Pac. 946.)

Error to the District Court, Big Horn County; Hon. Carroll H. Parmelee, Judge.

Upon an information charging Charles W. Eads with the crime of larceny of a horse of the value of $100, he was tried and convicted. He thereupon prosecuted error. The facts are stated in the opinion.

*E. E. Enterline* and *Victor T. Johnson,* for plaintiff in error.

The contents of a telegram can only be proved by the paper itself if it is in existence, and it is therefore incompetent to ask a witness whether he wrote or sent a telegram containing certain matters stated in the question without first showing the telegram to the witness and asking him whether he wrote the same. (Greenleaf's Ev., Sec. 463; 1 Jones Ev., Secs. 209, 232; 3 Id. Sec. 850.) It was error therefore for the court to permit the attorney for the state to ask the defendant on cross-examination whether he knew that his attorney had wired to have the horse claimed to have been stolen attached in another state to which it had been shipped, no effort having been made to

prove that the telegram was lost or could not be produced. Nothing could be more damaging to a party than evidence tending to prove the suppression or destruction of evidence by him. (Hay v. Peterson, 6 Wyo. 419.)

Counsel for the State having, on cross-examination, shown that defendant's witness Berg had talked over the description of the horse or horses in question with defendant's attorneys, it was error for the court to exclude the testimony offered by counsel for the defendant to show that the witness had described the horse to counsel without any suggestion by the latter.

Counsel for the State improperly asked the defendant if he was the father of Kize Eads and received the answer that he was. The prejudicial character of the question not having been learned until subsequently by counsel for the defendant, the misconduct of the State's counsel did not appear in time to offer a pertinent objection to the question, therefore, the court should have granted a new trial on the ground of such misconduct, the same being fully set out in the motion for a new trial.

The authorities seem to be conflicting as to whether a witness may be discredited by a showing that he has been arrested or indicted. It is held in some courts that the mere fact of arrest and indictment amounts to nothing more than an accusation which may be wholly without foundation, and that questions referring merely to such arrest or indictments are inadmissible on cross-examination as having no bearing upon his credibility. (State v. Howard, 102 Mo. 142; Pullen v. Pullen, 43 N. J. Eq. 136; State v. Grant, 104 Mo. 56; People v. Crapo, 76 N. Y. 288; People v. Irving, 95 N. Y. 541; Marks v. Hilsendegon, 46 Mich. 336.) In other jurisdictions it has been held that the credibility of a witness may be attacked by showing that he has been charged with the commission of an infamous crime, or that he has been arrested for a crime involving moral turpitude. (Jackson v. State, 33 Tex. Cr. 281; Carroll v. State, 32 Id. 431; Driscoll v. People, 47 Mich. 413; Hanoff v. State, 37 O. St.

178; Hill v. State, 42 Neb. 503.) We maintain that it was prejudicial to ask the defendant about his being prosecuted for horse stealing in another county. (Johnson ·v. State, 8 Wyo. 494.) If, however, it should be held that such cross-examination was proper then we insist that it was error to sustain the objections to the cross-examination of the State's witness Fedders, the object of which examination was to show previous criminal prosecution of said witness.

*W. E. Mullen*, Attorney General, for the State.

A verdict will not be disturbed for a conflict of evidence if there be sufficient evidence to sustain it. The weight of the evidence is for the jury. (Keffer v. State, 12 Wyo. 49; Edwards v. Murray, 5 Wyo. 153.) The examination of the defendant with reference to the sending of the telegram for the attachment of the horse in Nebraska, claimed by the prosecution to be the animal stolen, was for the purpose of showing that the defendant had sought to suppress or intercept evidence which was desired by the prosecution. It was not shown that the defendant had anything to do with the sending of the telegram, and the evidence finally brought out, even though irrelevant, was of small importance, and cannot be held to have been prejudicial.

There was no attempt on the part of counsel for the State to show that the witness Berg had been coached by counsel for the defendant,' and hence it was immaterial on re-direct examination to show that the witness and not counsel had given the description of the horse in their consultation. It is perfectly proper for counsel to consult witnesses who are to be introduced by his client upon the trial.

There is nothing in the record to show that any member of the jury knew Kize Eads, the son of the defendant, either personally or by reputation, and hence there is nothing to show that the reference on cross-examination of the defendant to the fact that he was the father of Kize Eads was prejudicial.

It is conceded that there is a conflict of authority as to whether a witness may be discredited by a showing that

he has been arrested and indicted. (30 Ency. Law, (2nd Ed.) 1086.) A defendant in a criminal prosecution testifying in his own behalf comes under the rule as to credibility applicable to witnesses generally. (Younger v. State, 12 Wyo. 24.)

SCOTT, JUSTICE.

The plaintiff in error who was the defendant below and who will be referred to as the defendant was charged by information in the district court of Big Horn County with having, on the 31st day of October, 1908, committed the crime of larceny of a horse of the value of one hundred dollars, the personal property of R. W. Hale. He was arraigned, plead not guilty, tried, convicted and brings the case here on error.

1. The defendant seeks to predicate error on the alleged misconduct of H. S. Ridgely, an attorney at law, who assisted the county and prosecuting attorney in the trial of the case, in asking upon cross-examination of the defendant who testified in his own behalf the following question, viz: "You are the father of Kize Eads?" to which question the defendant made answer: "Yes, I guess I am." This question was not germane to anything brought out on direct examination nor was it relevant to any issue in the case. It was not objected to on the ground of irrelevancy or at all nor was the answer made the subject of a motion to strike but went to the jury unchallenged in any way. No attempt was made to disclose its prejudicial character to the court until after verdict. Upon motion for a new trial in support of which one of counsel for defendant made affidavit in substance as follows: That he, the attorney for the defendant, was not informed as to the character of Kize Eads when the question was propounded. That since the trial affiant has learned that said Kize Eads had a very bad reputation for honesty and integrity in the said county as to being law abiding and has learned that he was compelled to leave the county on account of warnings received that he

would be violently dealt with if he did not leave. That
one of his associates had been foully dealt with and that
immediately thereafter the said Kize Eads received notice
that if he did not leave the said county he would likewise
be foully dealt with and that he did leave the county to
escape personal violence. That on information and belief
the question was asked of the defendant concerning his
relation to Kize Eads for the sole and only purpose of
calling the attention of the jury to the fact that the de-
fendant was related to a person who had a bad reputation
and thus prejudice the defendant in the minds of the jury,
and for no other purpose whatever. That affiant took no
exception or made no objection at the time for the reason
that he did not know until after defendant had left the
witness stand that Kize Eads was a man of bad reputation
and of the facts connected therewith, and that the affiant
lives in Sheridan County.

Whatever merit there may be in this showing it is and
was apparent at the time the question was asked that it
called for irrelevant testimony. The court undoubtedly
would have sustained an objection upon that ground had
an objection been made. Had that been done the alleged
misconduct of counsel would have been eliminated. There
was no counter affidavit and however reprehensible the con-
duct of counsel may have been the court's attention was not
called by timely objection to the alleged misconduct. With-
out such objection and an exception taken at the time to an
adverse ruling and the opportunity offered the trial court
by means of such objection to correct such misconduct the
question cannot be here considered. This court has so held
in Horn v. State, 12 Wyo. 80, and in Curran v. State, id.
553. The question was not sought to be raised until after
verdict. It was then too late.

2. Other alleged acts of misconduct of the said Ridgely
with reference to examining witnesses are complained of
but they were not objected to at the time. An exception
to the alleged misconduct is not of itself sufficient (State v.

Waters, 36 Wash. 358, 364, 78 Pac. 897; Rangenier v. Seattle Electric Co. (1909), 100 Pac. 842), and under the rule above announced error if any in that respect was not preserved in the record.

3.  The defendant was sworn and testified as a witness in his own behalf. It is urged that the court erred in overruling the objections interposed by him to each and all of the following questions propounded by counsel for the State on his cross-examination, to-wit: "Question. Did you wire down to Allen G. Fisher, an attorney at Chadron, Nebraska, and ask him to have the horse attached so it could not be returned to Wyoming? Answer. No sir. Question. Did you have your attorney Johnson wire that? Answer. No sir. Question. You didn't know he had wired? Answer. I found out afterward." The first two questions having been answered in the negative no harm was done to the defendant in permitting them to be asked. They can only be considered here as throwing light upon the third question and the alleged error in permitting it to be asked over the objection of the defendant. The objection to the last question was on the ground that it was not the best evidence, and for the further reason that it had not been shown that Johnson was acting under the direction of the defendant, and that it was not proper cross-examination.

The object and purpose of this examination was to show an attempt on the part of the defendant to keep the horse, which he was charged with stealing, out of the jurisdiction of the court and embarrass the state in the matter of its identification. If such fact could be shown, it was proper for the state to do so as the jury might properly infer therefrom a consciousness of guilt on the part of the defendant, the weight of which evidence would be for the jury. In order to elucidate the matter we will refer to the evidence on this phase of the case. The evidence tended to show that in the summer of 1905 the defendant sold the horse which was the subject of the larceny to Dr. Hale. At the time of the alleged larceny this horse had been broken and was

kept in a pasture. In the fall of 1907 the defendant for and on behalf of his daughter rounded up a bunch of horses, sold and delivered them to one Gregg who shipped them east. That in the bunch so sold to Gregg the horse sold to Dr. Hale was found in a pasture near Chadron, Nebraska, where Gregg was keeping the horses. The defendant contended that this was not the Hale horse but a half brother to that horse. Much evidence was introduced on both sides upon the question of identity, and after the horse was shipped back to the county seat it was examined by the witnesses with a view to its identification, and during the trial was viewed by the jury under the direction of the court.

The defendant upon his direct examination especially denied that the horse found in the pasture at Chadron, Nebraska, and shipped back to Wyoming was the horse he had sold to Doctor Hale. Any attempt upon his part to prevent the horse from being seen and inspected at the time of trial by witnesses who had theretofore known the horse was proper to go to the jury as bearing on the question of guilt.

It is urged that it was not the best evidence in this that the question called for the contents of a telegram the proof of which was the telegram itself. It will be observed that the defendant denied sending the telegram. The state was not limited in its cross-examination nor bound by such denial. The question in effect inquired of the defendant if he knew his attorney had wired to Fisher to have the horse attached so it could not be returned to Wyoming. It is apparent from the questions asked that the court and counsel understood that the question related to the time in fact of sending such telegram if any was sent. It is equally apparent from defendant's answer that he so understood the question. His answer is, "I found out afterwards." This answer clearly implies that he understood the question as applying to the time when the supposed telegram was sent. If the defendant knew that his attorney was about to send or knew at the time such a telegram was being sent it was a matter of legitimate inquiry upon cross-examination as a

circumstance bearing upon the question as to whether he authorized or procured the sending of the telegram.

The action was not for a recovery upon a deed or other contract in writing nor one negotiated by telegraph, nor was it a criminal action for fraud committed by means of telegraphing in which cases the written contract, deed, or telegrams would constitute the best evidence. The subject of the inquiry here was the conduct of the defendant as indicative of guilt of the crime charged. It is stated in §890, Wigmore on Ev., that: "The law is that a defendant taking the stand as a witness may as a witness be impeached like any other witness." (Jackson v. State, 33 Tex. Cr. Rep., 47 Am. St. 30; Hanoff v. State, 37 O. St. 178.) It is apparent that the state sought to prove the contents of the telegram as an admission on the part of the defendant or to lay the predicate for impeachment. If he sent or procured or was a party to the sending of such a telegram the latter would be competent evidence against him of what it contained, but the state would not in the first instance be bound to produce the telegram any more than it would in the first instance in the impeachment of a witness or proving the admissions of a party in writing be compelled to produce a letter or other writing. In such a case if the answers are contradictory to the contents of the letter or writing the party propounding the questions has the option of having the letter or writing properly identified and received in evidence, or of not pursuing the subject further. (§§1023, 1260 (3) Wigmore on Ev.; Western Manufacturers' Material Ins. Co. v. Boughlin, 136 Ill. 317, 26 N. E. 591; Warth v. Lowenstein, 219 Ill. 222, 76 N. E. 378; State v. Hayes, 138 N. C. 660, 50 S. E. 623.) If the defendant was a party in an attempt to have any one send such a telegram, that fact would be competent evidence whether the telegram was sent or not. The method of proving the acts and conduct of the defendant in this kind of a case was not confined to written but could be shown by oral testimony and the contents of the telegram as bearing on the defendant's conduct

could properly be included in oral questions propounded to him in laying the foundation for impeachment, as in the case of an ordinary witness or in seeking his admission as a party. The inquiry went to the conduct of a party to the case and sought an admission of such party while testifying as a witness in his own behalf of prior conduct inconsistent with his claim of innocence. He knew whether he was connected in any way with the sending of such a telegram. That was the matter to which the question was directed and that question could not well be answered otherwise than orally. Indeed it was not nor is it here claimed that the authority to send such a telegram must be in writing.

In using the contents of a writing for the purpose of laying the foundation for impeachment the law is that the cross-examiner may accept an affirmative answer as proof of the contents, nor is the rule about proving a doncument's contents by production thereby violated. (§1260 Wig. on Ev.) Such affirmative answer amounts to an admission of the witness or party. Upon this subject it is said in §684, Wharton's Criminal Evidence (9th Ed): "We may now regard it as settled that the admissions of a party may be received when relating to the contents of a writing, without notice to produce; nor can such testimony be excluded on the ground that it is parol proof of a written instrument." The law as thus announced sustains the ruling of the lower court in permitting the question to be asked.

4. One Berg, the grandson of the defendant, was called and testified as a witness for the defense. His description of the horse sold to Dr. Hale differed from that given by the witnesses for the State. Upon cross-examination by the county and prosecuting attorney he was asked the following questions: "You talked to his (defendant's) attorneys about it? Talked over these descriptions?" To this question the witness made answer: "Yes, sir." No objection was interposed to the question nor was there any motion to strike the answer. Upon re-direct examination the following question was propounded to the witness: "You may

state to the court whether you described that horse to counsel or whether counsel described the horse to you?" The state objected to the question as immaterial, which objection was sustained and to which ruling the defendant excepted. The defendant then offered to prove by the witness "that the witness himself gave counsel a description of this horse without any suggestion on the part of counsel at all." Objection to the offer was sustained, to which ruling exception was taken.

The evidence offered would be clearly incompetent upon examination in chief, and its competency upon re-direct examination would depend upon whether it was germane to and had a tendency to clear up and explain the witness' testimony given upon cross-examination.

The right and duty of an attorney regularly retained in a case to see his client's witnesses and ascertain what they know about the controversy is plain. An attorney would be derelict who failed to inform himself in this respect. (§788 Wigmore on Ev.) It is only when it is sought to show an actual fraudulent conference, an attempt to corrupt or to influence a witness to color his testimony or to testify falsely or to avoid the service of process or to do anything that would have a tendency to defeat justice that what occurs between an attorney and his client's witnesses becomes material. The state did not attempt to go into any such matter upon cross-examination further than to show what the law exacts of an attorney as his duty to himself, the court and his client, viz.: to prepare for the intelligent presentation of his client's cause upon the trial. Counsel thinks the evidence was proper as rebutting an inference which the jury might draw from the evidence given on cross-examination that he as representing the defendant was coaching the witness and trying to build up and manufacture evidence for the defense. We cannot assume that the jury was misled by the question or that the defendant was prejudiced thereby. The question was not objected to nor had the jury any right upon the evidence to draw such inference. If the defendant

thought that the jury would be misled by the testimony in this respect he no doubt could have obviated the matter by the preparation and presentation of a proper instruction to be given by the court covering that phase of the case.

5. Upon cross-examination by defendant's counsel it was sought to discredit one Fedders who was sworn and testified as a witness on behalf of the state by questions and by offering to show by the witness for the purpose of affecting his credibility that he had been arrested for shooting a man in a house of prostitution at Thermopolis in January, 1908. The evidence proffered was collateral to the issue and unless it clearly tended to discredit the witness it should not be received. Inquiry may be made as to specific instances of recent but not remote misconduct of a witness upon cross-examination of such witness within proper limits for the purpose of affecting his credibility. In such a case his answers preclude further inquiry, in other words, extrinsic evidence of such collateral matter is not permissible. The right and limits of such cross-examination when relevant on the subject of bad character rests largely in the discretion of the trial court. (§§981, 987 Wigmore on Ev.) That he had been arrested for shooting a man in a bawdy house did not of itself establish the fact that the witness was in or was a frequenter of or dwelt in the atmosphere of a bawdy house. It was nothing more than an accusation of crime. (State v. Greenburg, 55 Kan. 404, 53 Pac. 61.) What the state did in the matter of the charge as contained in the offer did not prove or tend to prove the charge upon which the witness was arrested if at all. The witness was not asked what he had done, but what the state had done. In Nolan v. Brooklyn City & N. R. R. Co., 87 N. Y. 68, 41 Am. Rep. 345, the witness was asked not what he had done but what the fire department had done, whether it had expelled him. The question was held improper. The Court of Appeals of that state in People v. Irving, 95 N. Y., say: "We have held of late that mere charges or accusations, or even indictments, may not be so inquired into since they

are consistent with innocence, and may exist without moral delinquency. (People v. Crapo, 76 N. Y. 288, 32 Am. Rep. 302; People v. Brown, 72 N. Y. 571, 28 Am. Rep. 183; Ryan v. People, 79 N. Y. 594.)" In People v. Casey, 72 N. Y. 393, the prisoner was indicted for an assault with a dangerous weapon and testified in his own behalf. On cross-examination the prosecutor was permitted to question him as to other altercations in which he had been engaged, and other assaults which he had committed and it was held no error. The court say, in commenting on that case in People v. Irving, *supra:* "Facts were asked for there and not accusations or irresponsible charges." In Ryan v. People, *supra,* it was held that an indictment was a mere accusation and had no legitimate tendency to discredit a witness or impeach his moral character. We are aware that the decisions are in hopeless conflict upon this question. The rule, however, followed by the Court of Appeals of New York as above set forth is the one which commends itself to us as sound in principle. We think in all such cases the fact of misconduct of the witness and not what the state or others have done in the way of mere accusations or by way of arrest is a matter of legitimate inquiry within the limits of a sound discretion of the trial court. Whether the witness can refuse to answer any question with reference thereto under a claim of personal privilege is a matter which is not here presented.

Following the foregoing offer of proof the defendant's counsel asked the same witness on cross-examination as follows: "You were arrested at the same time for carrying concealed weapons and convicted in Justice court at Thermopolis, Wyoming?" The question was objected to on the ground that it was not a proper question to ask the witness as it did not purport to call for proof of a felony. The objection was sustained and the defendant excepted. Thereupon defendant made offer of proof as follows: "Defendant offers to prove on cross-examination of this witness that he was convicted in justice court at Thermopolis, Wyo-

ming, for the offense of carrying concealed weapons, and growing out of the transaction of shooting in a house of prostitution heretofore mentioned in one of the preceding questions." The offer was objected to as immaterial, irrelevant and incompetent. The objection was sustained and exception noted.

This offer refers to and must be construed in connection with a preceding question if any in which the transaction of shooting a man in a house of prostitution is referred to. The place of the occurrence of such shooting is not mentioned or referred to as a house of prostitution in any preceding question as shown by the record. It is true that in contending for a right to propound a former question there was an offer to prove that this witness was arrested for shooting a man in such a place, but as already stated, such fact constituted nothing more than a mere accusation. The present offer refers to a question not found in the examination of this witness nor was any question propounded to him in which the latter part of the offer either alone or in connection with the former offer would be responsive, nor was it a clear and definite offer as affecting credibility to prove that the offense of carrying concealed weapons for which conviction was had was committed at the time and place of such alleged shooting or that the shooting was the result of carrying concealed weapons. In this connection it may be said that it is lawful to carry an unconcealed weapon for a lawful purpose. By reference to the former question and offer the time of the arrest for the misdemeanor was some time in January and at the time he was arrested for the shooting presumably at a subsequent time to such shooting. The record is silent as to whether such arrest was made in a house of prostitution and the offer does not purport to prove that he was arrested in such a place. Growing out of a transaction does not necessarily mean a part of such transaction either in point of time or place as to a subsequent act. Upon this condition of the record it cannot be said that the defendant had put himself in a position to

entitle him to an affirmative ruling with reference to this part of the offer.

We come now to the question as to whether the proffered evidence was competent for the purpose of discrediting the witness. In discussing the question of what crimes the conviction of which are relevant to indicate bad character as to credibility it is stated in Wigmore (§980) that: "If in a given jurisdiction general bad character is allowable for impeachment then any offense will serve to indicate such bad character. If character for veracity only is allowable for impeachment then only such specific offenses may be used as indicate a lack of veracity-character." In this jurisdiction the question is not regulated by statute and it has never been judicially determined as to whether impeachment of a witness may extend to general bad character or must be confined to his character for truth and veracity nor do we deem it necessary to here decide that question.

A misdemeanor is not an infamous crime nor does it always involve moral turpitude or lack of veracity in the perpetrator. It seems to us that the evidence to be competent and relevant to discredit the witness should at least tend to prove moral turpitude or a lack of veracity. The crime of carrying concealed weapons imputes neither, and if it be conceded that proof of a conviction therefor was technically admissible under the first rule as above stated by Wigmore, then it follows as a corrollary that its rejection though erroneous was not prejudicial. It is for material and prejudicial and not harmless error that this court is authorized to reverse a judgment. (Section 3744 R. S. 1899.) It is conceded that the evidence is sufficient to support the verdict.

We find the record clear of prejudicial error. The judgment will be affirmed.

*Affirmed.*

Potter, C. J., and Beard, J., concur.