**UNITED STATES v. SPAGNUOLO.**

No. 285, Docket 20992.

Circuit Court of Appeals, Second Circuit.

June 23, 1948.

Joseph Aronstein, of New York City, for defendant-appellant.

Roy M. Cohn, Asst. U. S. Atty., of New York City (John F. X. McGohey, U. S. Atty., and Robert Mitchell and Bruno Schachner, Asst. U. S. Attys., all of New York City, on the brief), for plaintiff-appellee.

Before AUGUSTUS N. HAND, CLARK, and FRANK, Circuit Judges.

CLARK, Circuit Judge.

The defendant attacks his conviction below particularly because of asserted failure to prove his possession of the distilled spirits which were discovered with only counterfeit revenue stamps upon them, in violation of 26 U.S.C.A.Int.Rev.Code, § 2803(a, g). Upon the trial to the jury the principal witness for the prosecution was one Howard Johnson, a bartender, who testified that some months before the day in question he had bought liquor of a man who was accompanied by the defendant, and that the seller had given him a telephone number to use for further orders. On June 6, 1947, Johnson telephoned an order to this number. It was established by other witnesses that about 11 a. m. a man arrived at 940 St. Nicholas Avenue, Manhattan, the apartment house where Johnson lived, and asked the elevator operator if he could leave a package on the elevator for Johnson. Being directed, however, to the office of the apartment house, he went there and was given permission by Mrs. Lewis, a building employee, to leave the package in the office. Later she saw two packages wrapped in brown paper on the floor. Shortly before noon Johnson left his apartment and found the defendant in front of the house. Defendant told Johnson that "he had the whiskey" and that it was "inside." Johnson told the defendant to wait while he got the money to pay for it. Johnson then went to meet two Alcohol Tax Agents, with whom he had made prearrangements, at a nearby bar and grill, where he pointed out the defendant to them. One agent detained defendant while the other went into the house, was referred by the elevator operator to the office, and at the office was shown by Mrs. Lewis the two packages in question. These being opened were found to contain twelve bottles of Scotch with no stamps upon them other than counterfeits.

This was substantial evidence of control, and hence possession, of the liquor and of the commission of the charged crime. In addition, there was other evidence, partially corroborative of it, and no evidence inconsistent with the normal conclusions which the jury obviously drew from the testimony. Though both the elevator operator and Mrs. Lewis failed to identify the defendant because they had taken no particular notice of the person who delivered the packages, nevertheless they concurred in saying that this person was white (as is the defendant) and that all the tenants in the apartment building were colored. While the Agents were taking the defendant to the station house, he took a handkerchief from his pocket and with it a piece of paper, upon which were Johnson's address and telephone number. The defendant offered no evidence.

■ Defendant now asserts error in the court's denial of his various motions to remove the case from the jury and in the court's charge submitting the case to the jury on the evidence. He makes several arguments, all directed to the issue of the sufficiency of the evidence, asserting that there was a failure "to establish the corpus delicti," that there was "no substantial evidence to support the verdict," that there was a failure to establish knowing and willful possession of untaxed spirits, and that there was error in the court's statement that there was "direct evidence" upon which the jury could base a verdict. The latter happens to be a misinterpretation of the charge where the court was defining a natural, even if obvious, distinction between circumstantial and direct evidence and stating the jury's duty to consider both types of evidence as present in the case. But as we have so often pointed out, there is no such differentiation in types of evidence and no such requirement of degrees of quantum of proof as is indicated in the defendants' contentions. It is true, of course, that the elements of the crime must be proven, though it helps little to shroud this requirement with a Latin phrase. But once the court concludes that there is a sufficient basis in the evidence for reasonable men to draw natural inferences of facts establishing the crime, the function of deciding upon the facts then rests with the jury and the court cannot properly take the case from it or limit its powers by trying to state conditions or quanta of proof or by using such expressions as that each element of the case must be proved beyond a reasonable doubt or every reasonable hypothesis of innocence must be excluded. There are no such requirements. True, of course, the jury must be warned that there must be proof of guilt beyond a reasonable doubt; but this "operates on the whole case, and not on separate bits of evidence each of which need not be so proven; and it cannot be accorded a quantitative value other than as a general cautionary admonition." United States v. Valenti, 2 Cir., 134 F.2d 362, 364, certiorari denied, Valenti v. United States, 319 U.S. 761, 63 S.Ct. 1317, 87 L. Ed. 1712. See also United States v. Feinberg, 2 Cir., 140 F.2d 592, 154 A.L.R. 272, certiorari denied 322 U.S. 726, 64 S.Ct. 943, 88 L.Ed. 1562, a ruling which, indeed, we have frequently repeated. United States v. Greenstein, 2 Cir., 153 F.2d 550; United States v. Picarelli, 2 Cir., 148 F.2d 997, certiorari denied 326 U.S. 722, 66 S.Ct. 27, 90 L.Ed. 427; United States v. Cohen, 2 Cir., 145 F.2d 82, 84, certiorari denied 323 U.S. 799, 65 S.Ct. 553, 89 L.Ed. 637; United States v. Andolschek, 2 Cir., 142 F.2d 503. Here the charge was quite appropriate, and the evidence ample to sustain the conviction. United States v. Perillo, 2 Cir., 164 F.2d 645.

The defendant objects to several rulings admitting evidence; but his objections below, when made at all, were so general, and his arguments in his brief to us are so vague, that we do not find it easy to understand the legal basis of all his assertions of error. In such a pass we should have difficulty in any event in discovering error. But upon examination we find that in one case the court ordered the evidence stricken before it had advanced to any point of importance, while in the others the evidence seems to us quite clearly admissible.

■ The evidence as to Johnson's previous purchase of liquor from a seller accompanied by the defendant does not necessarily show a crime, since we do not know whether or not that whiskey was in containers without the proper revenue stamps. Even if it was, it was perfectly admissible here, in view of its very close connection and background for the present series of events, which of course brought the defendant into the picture through the use of the telephone number then given Johnson. United States v. Sebo, 7 Cir., 101 F.2d 889, 891; United States v. Turley, 2 Cir., 135 F.2d 867, certiorari denied Burns v. United States, 320 U.S. 745, 64 S.Ct. 47, 88 L.Ed. 442. Had the order of proof been reversed, so that, instead of the chronological development, Johnson had told his story of June 6 and then been asked how he came to get in touch with defendant in the first place, probably no such contention would have been made at all.

■ The admission of testimony on Johnson's re-direct examination as to con-

versation with the Treasury Agents concerning his sale of liquor to a bar and grill at some proper time seems entirely proper as a link in carrying the matter back to the earlier transaction, of which evidence had already been properly admitted. As a matter of fact, it was actually at most a further amplification of testimony brought out by the defendant on cross-examination, and was so largely of a preliminary nature, giving the background of Johnson's telephone call for the whiskey here involved, that we cannot even find objection to it on the part of the defendant at the actual trial.

 Objection is also made to admission in evidence on redirect of a statement by Mrs. Lewis that a lady came to see her purportedly on behalf of the defendant after his arrest. The cross-examination had particularly concerned conversations between the witness and the two Revenue Agents, who had brought along the defendant in an endeavor to have her identify him. Further, she had also disclosed that they came to see her afterwards about the case. The incident on re-direct was so short and fleeting as certainly not to color the case in any degree; but the prosecutor's questions seem perfectly appropriate, as perhaps unnecessary rehabilitation of the witness, to show that she had talked with representatives not only of the government, but also of the defendant. So commonplace is the interviewing of witnesses before trial, so necessary, indeed, to the adequate preparation of a case, that jurors are fully cognizant of the practice and are properly suspicious of any denials of it. Osborn, The Mind of The Juror, 1937, 47. So any attempt by court or parties to suggest impropriety is improper. See 3 Wigmore on Evidence, 3d Ed. 1940, § 788; State v. Papa, 32 R.I. 453, 80 A. 12; Eads v. State, 17 Wyo. 490, 101 P. 946. Indeed Wigmore criticizes the latter case, which had held rebuttal testimony too immaterial and unnecessary to be important, on the theory that rehabilitation should always be proper. Here the claim of error in the brief, if not the objection itself, seems to have been directed to the court's restatement of what the witness had said, viz., "She [the witness] said that is what she said." This was in response to the question, "And she said she was coming on behalf of this man who had been arrested?" It appears to be an appropriate interpretation of a previous answer of the witness. If defendant thought it was not, he should have pointed out the alleged error at the time, so that the court could have corrected it at once or anticipated its later more formal and complete charge that the jurors were the sole judges of the evidence.

 The objection that the venue in the Southern District of New York was not proven at the trial is not well taken. We of course judicially know that 940 St. Nicholas Avenue is in the Borough of Manhattan. Portman v. United States, 8 Cir., 34 F.2d 406; Rossi v. United States, 7 Cir., 60 F.2d 955, 956, affirmed 289 U.S. 89, 63 S.Ct. 532, 77 L.Ed. 1051. Had there been error the defendant would have waived it by going to trial without objection. United States v. Jones, 2 Cir., 162 F.2d 72, 73.

Conviction affirmed.