44 So.2d 664 (1950)
MATHEWS
v.
STATE.
Supreme Court of Florida, Division B.
February 21, 1950.
*665 Wolfe, Wightman & Rowe, Clearwater, for appellant.
Richard W. Ervin, Attorney General and George M. Powell, Assistant Attorney General, for appellee.
SEBRING, Justice.
The defendant has appealed from a judgment of conviction of endeavoring to incite and procure a certain Sanders to commit perjury in a divorce suit to be instituted in the Circuit Court of Pinellas County, Florida, in violation of section 837.04 Florida Statutes 1941, F.S.A., which provides: "Whoever endeavors to incite or procure any other person to commit perjury, though no perjury is committed, shall be punished by imprisonment in the state prison not exceeding five years or in the county jail not exceeding one year."
The criminal information under which the conviction was obtained charged:
"That Arthur Guy Mathews * * * in the County of Nassau and State of New York, did endeavor to incite and procure another person, to-wit: Ernest Apgar Sanders, Jr. to commit perjury in the Circuit Court of Pinellas County, Florida, although no perjury was committed, by advising and counselling the said Ernest Apgar Sanders, Jr. to testify before one of the Circuit Judges of the Sixth Judicial Circuit of Florida in and for Pinellas County that he, the said Ernest Apgar Sanders, Jr., was a bona fide resident of the State of Florida and has been a resident of the State of Florida for ninety days prior to the filing by the said Ernest Apgar Sanders, Jr. of a suit for divorce in Pinellas County, Florida, against Corinne Sieck Sanders, the wife of Ernest Apgar Sanders, Jr., and in furtherance of the said advising and counselling by the said Arthur Guy Mathews aforesaid, the said Arthur Guy Mathews and Ernest Apgar Sanders, Jr., on the 22nd day of July, 1948, left the State of New York in an automobile belonging to Arthur Guy Mathews and drove to Clearwater, Florida, arriving in Clearwater, Florida on the 25th day of July, 1948, and the said Ernest Apgar Sanders, Jr., did on the 27th day of July, 1948, file in the Circuit Court of the Sixth Judicial Circuit of Florida in and for Pinellas County, a bill for divorce * * * in which Ernest Apgar Sanders, Jr. is plaintiff and Corinne Sieck Sanders is defendant, wherein the said Ernest Apgar Sanders, Jr. endeavored to secure a divorce from his wife, Corinne Sieck Sanders, it being alleged in said bill of complaint that the said Ernest Apgar Sanders, Jr. is an actual and bona fide resident of the County of Orange, State of Florida, and that he had resided in the State of Florida for more than ninety days last past; and the said Arthur Guy Mathews did then and there further endeavor to *666 incite and procure the said Ernest Apgar Sanders, Jr. to commit perjury, although no perjury was committed, by advising and counselling the said Ernest Apgar Sanders, Jr. to falsely swear and testify before one of the Circuit Judges of Pinelas County, Florida, that he, the said Ernest Apgar Sanders, Jr. was a bona fide resident of the County of Orange and State of Florida and had been for more than ninety days prior to the filing of the bill of complaint on July 27th, 1948, the said testimony to be given by the said Ernest Apgar Sanders, Jr. before the Circuit Judge of Pinellas County, Florida, was to be false and untrue, and the false testimony the said Arthur Guy Mathews endeavored to incite and procure the said Ernest Apgar Sanders, Jr. to give before the Circuit Judge of Pinellas County, Florida, in said divorce hearing was and would be material to the issue to be heard, tried and determined by said Court, said Court having jurisdiction to hear, try and determine the issues in said cause, and the said Arthur Guy Mathews then and there well knew that the false testimony he endeavored to incite and procure of and from the said Ernest Apgar Sanders, Jr., was false and untrue, he the said Arthur Guy Mathews then and there well knowing that Ernest Apgar Sanders, Jr. was not a bona fide resident of the County of Orange and State of Florida but was in truth and in fact a resident of the County of Nassau, State of New York."
The first contention of the appellant is that a motion to quash the information should have been granted on the ground that the information failed to show that the Circuit Court of Pinellas County, Florida, had jurisdiction to try and determine the criminal charge. The argument of the appellant, as stated in his brief, is, that though the information alleges, in all, "four different dates and a chain of events, from July 9, 1948 in Nassau County, New York, until July 27, 1948, when a divorce action was filed in Pinellas County, Florida, by another person, after which the information charges that the defendant `then and there incited and procured Ernest Apgar Sanders, Jr. to commit perjury although no perjury was committed'" it cannot be said "that the information charges any offense to have been committed in Pinellas County, State of Florida, nor does it charge any definite date on which any alleged offense was committed in the State of Florida."
Perhaps if the counselling and advising of Sanders to commit perjury in the Florida courts had been done in the State of New York, and had ended there, the contention of the appellant might have been tenable. But what was done by Mathews, as disclosed by the information, was not confined to the State of New York, but was in the nature of a continuing offense. The plan to commit perjury in fraud of the State of Florida, its courts and its laws was first conceived and proposed by Mathews in New York, it is true, but it was not concluded there, for in furtherance of the fraudulent plan Mathews transported Sanders to Pinellas County where on July 27, 1948, the latter in an attempted consummation of the fraud, filed his bill of complaint, the allegations of which necessitated and plainly contemplated the very perjury in reference to the residence of the plaintiff in the suit, which the appellant, by his advice and counsel, had incited Sanders to commit. Under the circumstances disclosed by the allegations, we hold that the information was not subject to the motion to quash.
The second contention made by the appellant is that the trial court committed reversible error when during the course of the trial it allowed the prosecution to place in evidence a certain letter written by the appellant to the attorney employed by Sanders to institute the divorce suit in Pinellas County, and the attorney's answer thereto, over the objection of the appellant that the letters were privileged communications between attorney and client and hence were inadmissible as a matter of law.
There is no merit in this contention. Though it is the rule that communications between attorney and client are privileged the record makes it clear that no such relationship existed between the appellant and *667 the attorney subsequently employed by Sanders to represent him in the divorce proceedings, at the time the letters were written. The rule, therefore, was not applicable under the facts of the case at bar. See Keir v. State, 152 Fla. 389, 11 So.2d 886; Code of Ethics Governing Attorneys, Rule b, Section 1, Par. 37, adopted by the Supreme Court of Florida, January 27, 1941; 70 C.J. 406, Witnesses, Sec. 547(b).
Another ground urged by the appellant for reversal of the judgment is with respect to several incidents transpiring during the course of the trial, which because they raise a single issue should be considered together.
During the course of the trial it was developed by the state attorney through direct examination of the prosecuting witness Sanders that after he, Sanders, had been duly subpoenaed by the State to appear as a material witness in the trial of Mathews, the latter's counsel had Sanders come to his office to talk with him about certain phases of the case to be tried. After this testimony was given at the trial by Sanders, in response to questions by the state attorney, the following colloquy took place between the presiding judge and the attorney for the appellant:
"Mr. Wightman: Your Honor, I ask that the Jury be instructed and that Mr. McMullen [the state attorney] be instructed that there is absolutely nothing wrong in my talking to any witness at any time, and if he is making any inference against me or my law work, I want it straightened out right here and now, your Honor, if you please, and I think I am entitled to an instruction.
"The Court: The jury is entitled to all the facts, and if those are facts, they are entitled to it.
"Mr. Wightman: Yes, I want the jury to know that, but I want the jury to know also that there is absolutely nothing wrong in any attorney in any case speaking to any witness in that case, or talking to him.
"The Court: Well, I am not going to tell the jury that it is wrong or that it is not wrong unless you insist on it, and if you insist on it  well, I just don't want to say, but if you want me to do so, I will.
"Mr. Wightman: I would like for you to say.
"The Court: I would say if you knew  I don't know whether you knew or not  if you knew that this witness was under subpoena to appear before the Court and testify in this case, that you should at least have gotten in touch with the Court or Mr. McMullen, or some one in authority, before you took this witness to your office and took a recording of what he was going to say or said.
"Mr. Wightman: Your Honor, I ask that this Court declare a mistrial in this case on that, because I think the defendant has been prejudiced.
"The Court: You asked me to tell you, didn't you?
"Mr. Wightman: Yes.
"The Court: And I shall instruct the jury in the final charge, if you want me to, the same thing.
"Mr. Wightman: I ask the Court at this time to declare a mistrial in this case, because I feel that the defendant has been prejudiced by the State's questions and the Court's instructions at this time.

* * * * * *
"The Court: Your motion is overruled, Mr. Wightman."
Later in the trial, counsel for the appellant renewed his motion for mistrial, whereupon the following transpired.
"Mr. Wightman: I would like to renew at this time the defendant's motion to have the Court to declare a mistrial in this case for the reason that we feel that the defendant has been prejudiced before this jury by the remarks of the State Attorney and the inference that there was something wrong, and that it was improper, that there was anything wrong or improper for his counsel to speak with a State's witness after the witness was under subpoena, whether counsel knew it or not. I think it was prejudicial when the Court, in its instruction at that time indicated that it was wrong, improper and unfair. In other *668 words, that it was unethical. I think that the defendant, before this jury, has been prejudiced so that he cannot have a fair trial, and if this case continues with the present jury, he may not receive a fair trial.
"The Court: Do you think it was right for you to do that?
"Mr. Wightman: Yes sir, I certainly do, and I always have, your Honor.
"The Court: Your sense of propriety is not entirely in accord with mine. The motion is overruled."
At the conclusion of the submission of evidence and the argument of counsel the presiding judge charged the jury as follows:
"The Court: Now gentlemen, in the course of the trial today, it was brought out that this witness was taken or caused to go to the office of counsel for the defendant in this case, and there a recording was made of what the witness said. * * * Now, it was said this morning during the course of the trial  Mr. Wightman asked if it was proper or wanted a ruling upon whether it was proper for him to take this witness up there, and I told him at that time that I thought it was improper. Now, there is no Statute on the subject, nor is there any written ethics of the profession, but there is a procedure or a custom that has been adopted that when a witness for the State has been subpoenaed to testify that he should not be talked to in the absence of authority, or the State Attorney, or without the knowledge of the State Attorney or the Court of some one. Mr. Wightman didn't commit any crime when he did that, but it was most unusual, and for that reason, gentlemen, I had to say that because Mr. Wightman asked me to say it * * *.
"Now, gentlemen of the jury, whatever Mr. Wightman may have done in this case, we are not trying him, we are trying this defendant. Don't let anything influence you in this case other than the evidence as you heard it from the witness stand and the law as I give it to you in these charges. Permit no feeling or prejudice nor sympathy to influence you, but do your duty as you see it in this case."
During the charging of the jury the presiding judge refused to give the following charge requested by the defendant, on the same issue:
"It appears in this case that one of the attorneys for the defendant has talked to the witness, Sanders, while he was under subpoena to appear in this cause.
"It is not only the right but the duty of the attorney representing a defendant, to talk to not only his own witnesses, but any witnesses for the State, if he has an opportunity to do so, and to learn from them their knowledge of the facts and circumstances of the case, and what their testimony will be concerning the same before they are called on the stand to testify, and no improper inferences are to be drawn from the performance of such duties."
It is argued by the appellant that the trial judge committed reversible error in refusing to grant a mistrial, in making the remarks he did in respect to the conduct of appellant's attorney in interviewing the prosecuting witness in giving the charge with respect to such conduct, and in refusing the charge on the subject as requested by the appellant.
We are unable to say that the trial court committed reversible error in refusing to grant the motion for a mistrial, but it does appear to us from a careful consideration of the record that the remarks made by the trial judge were such as might easily have influenced the jury in arriving at the verdict that was rendered, that the charge given by the trial judge did not correctly state the applicable law and that accordingly a new trial should have been granted.
Rule B, Section 1, Paragraph 5 of the Code of Ethics Governing Attorneys, adopted by the Supreme Court of Florida on January 27, 1941, reads in part: "The Defense or Prosecution of Those Accused of Crime  It is the right of the lawyer to undertake the defense of a person accused of crime, regardless of his personal opinion as to the guilt of the accused; otherwise innocent persons, victims only of suspicious *669 circumstances, might be denied proper defense. Having undertaken such defense, the lawyer is bound, by all fair and honorable means, to present every defense that the law of the land permits, to the end that no person may be deprived of life or liberty, but by due process of law."
Rule B, Section 1, Paragraph 39 of the Code of Ethics Governing Attorneys, provides: "Witnesses  A lawyer may properly interview any witness or prospective witness for the opposing side in any civil or criminal action without the consent of opposing counsel or party. In doing so, however, he should scrupulously avoid any suggestion calculated to induce the witness to suppress or deviate from the truth, or in any degree to affect his free and untrammeled conduct when appearing at the trial or on the witness stand."
Under the Code of Ethics the attorney for the appellant not only had the right but it was his plain duty to interview and examine as many as possible of the persons who were supposed to know the facts, so as to be able to ascertain the truth concerning the charge in controversy and to prepare his defense thereto. In doing so, he was not under any obligation to first secure the authority or permission of the State Attorney for the purpose, merely because of the fact that the State Attorney may have subpoenaed them to appear as witnesses for the prosecution. As stated in State v. Papa, 32 R.I. 453, 80 A. 12, 15: "Witnesses are not parties, and should not be partisans. They do not belong to either side of the controversy. They may be summoned by one or the other or both, but are not retained by either. It would be a most unfortunate condition of affairs if a party to a suit, civil or criminal, should be permitted to monopolize the sources of evidence applicable to the case to use or not as might be deemed most advantageous. Such a proceeding in a criminal case would violate the provisions of the Constitution * * *
"The defendant, therefore, has the constitutional right to have compulsory process for obtaining witnesses to testify in his behalf. He has also the right, either personally or by attorney, to ascertain what their testimony will be. But in the interviews with an examination of witnesses, out of court, and before the trial of the case, the examiner, whoever he may be, layman or lawyer, must exercise the utmost care and caution to extract and not to inject information, and by all means to resist the temptation to influence or bias the testimony of the witnesses. * * * If it was charged that an attorney had been guity of such impropriety, it would constitute cause for the disciplinary action of the court, and should not be submitted to the jury, unless it appeared that it was done with the knowledge and consent of his client, in which case the matter should be left to the determination of the jury. The court, however, should refrain from the use of expressions which are likely to give the jury the impression that the court has prejudged the matter. * * *" See also Wigmore on Evidence, 3rd Ed. Vol 3, Sec. 788; United States v. Spagnuolo, 2 Cir., 168 F.2d 768; Leahy v. State, 111 Tex.Cr.R. 570, 13 S.W.2d 874; Eads v. State, 17 Wyo. 490, 101 P. 946.
It will be recalled that in the presence of the jury the trial judge, in addressing the defense attorney, made the statements in reference to his interview of the witness Sanders: "Well, I am not going to tell the jury that it is wrong or that it is not wrong unless you insist on it, and if you insist on it  well, I just don't want to say, but if you want me to do so, I will." "I would say if you knew  I don't know whether you knew or not  if you knew that this witness was under subpoena to appear before the Court and testify in this case, that you should at least have gotten in touch with the Court or Mr. McMullen [the state attorney] or someone in authority, before you took this witness to your office and took a recording of what he was going to say or said." In ruling on the motion for mistrial the trial judge, in the presence of the jury, said by way of question to the defense attorney, "Do you think it was right for you to do that?" In answer to the question the attorney stated, "Yes sir, *670 I certainly do, and I always have your Honor," to which the trial judge replied, "Your sense of propriety is not entirely in accord with mine. The motion is overruled." In the charge to the jury, the trial judge stated: "Mr. Wightman didn't commit any crime when he did that, but it was most unusual."
There is not the slightest intimation in the record that when the defense attorney attempted to interview the witness Sanders he sought in any way "to induce the witness to suppress or deviate from the truth, or in any degree to affect his free and untrammeled conduct when appearing at the trial or on the witness stand", and certainly there is no intimation that if the attorney had been guilty of such culpable conduct, it was "with the knowledge and consent of his client" and hence "should be left to the determination of the jury."
Under the circumstances reflected by the record we think that it was a mistake of a serious nature for the trial judge to have imparted to the jury the impression that the defense attorney was not at perfect liberty to question the prosecuting witness and that in interviewing the witness without the permission of the state attorney or the court he had been guilty of conduct contrary to the ethics of his profession. From the very nature of the case being tried, the question of the weight to be given the testimony of the prosecuting witness and the accused was an important issue. The remarks and charge given by the trial judge were highly prejudicial to the cause of the appellant and may well have served to tip the scales against the accused and in favor of the prosecution. Under the circumstances, it cannot be said that the accused has had a fair trial.
The remaining grounds for reversal have been duly considered and are found to be without merit.
The judgment appealed from should be reversed and the cause remanded for a new trial.
It is so ordered.
ADAMS, C.J., and CHAPMAN and ROBERTS, JJ., concur.