**Jerry Wayne WRIGHT, Appellant (Defendant below),**

v.

**STATE of Wyoming, Appellee (Plaintiff below).**

No. 3803.

Supreme Court of Wyoming.

April 1, 1970.

William J. Knudsen, Jr., Laramie, for appellant.

James E. Barrett, Atty. Gen., Richard A. Stacy, Asst. Atty. Gen., Cheyenne, for appellee.

Before GRAY, C. J., and McINTYRE, PARKER and McEWAN, JJ.

Mr. Justice McINTYRE delivered the opinion of the court.

Jerry Wayne Wright was convicted of the possession and sale, on November 17, 1968, of marijuana. On appeal from the judgment and sentence against him, he assigns two grounds of reversible error, namely:

1. The trial court erred in allowing the state to cross-examine defendant, over defense counsel's objection, with respect to an arrest on a separate charge.

2. Certain testimony on rebuttal went beyond the scope of rebuttal evidence and had a harmful effect on the jury.

A careful review of the record convinces us prejudicial error did not occur where defendant claims it did. We will explain why.

*Concerning Arrest*

Appellant admits in his brief the state was alleging defendant, Wright, and Jim Harvey went to the house of Richard Wordeman on the evening of November 17, 1968. According to the State's evidence, Wright, Harvey, Wordeman, and Wordeman's wife sat around at the Wordeman

home smoking marijuana cigarettes; Wordeman asked Wright if he could have a cigarette for later in the evening and Wright consented; after Wright and Harvey left, Wordeman took the cigarette to the police.

Defendant-Wright testified on direct examination to the day's events and to the things he did November 17, 1968. None of the events previously testified to by Wordeman were mentioned. In fact, Wright denied he saw Wordeman that day; he denied going to Wordeman's house that day; and he denied he had marijuana in his possession November 17, 1968.

The last question asked of the defendant on direct examination was how he knew all of the events he talked about occurred November 17, 1968. Before he could answer, his attorney explained, "Of course, this is of utmost importance." Wright then testified to his reasons for being sure his relating of events for November 17, 1968 were correct.

The prosecution was aware that Wright was at Wordeman's home November 23, 1968. As a matter of fact, the only date on which Wright would admit to having contact with Wordeman, except at Wright's service station, was November 23, 1968.

The prosecution commenced its cross-examination of defendant-Wright, not only with knowledge that Wright was at Wordeman's home November 23, but also with an emphatic denial by defendant that he had any contact with Wordeman November 17. The transcript of testimony reflects the following at this point:

"Q. Mr. Wright, you are very sure about this particular day? Do you remember what you were doing November 23rd? A. I do.

"Q. Did you see Mr. Wordeman November 23rd? A. Yes I did.

"Q. What were you doing at that time?

"MR. HANES: Your Honor. I object.

THE COURT: Overruled.

"MR. HANES: May I approach the Bench? THE COURT: Yes.

"(Whereupon, the following proceedings were had out of the presence of the jury:)

"MR. HANES: He is also facing charges that occurred then and I think we are getting into some areas would be improper questioning under our Fifth amendment and Article 1, Section 11, of the Wyoming constitution. THE COURT: I think he is just testing his memory here and he has a right to do it.

"MR. HANES: This is going to be getting into events pertaining to this other situation. THE COURT: Maybe and maybe not but he isn't now. Overruled.

"(Whereupon, the following proceedings were had in the presence of the jury:)
"(Question read)

"A. You want what I did all day long?

"Q. I would like to know if you contacted Mr. Wordeman? A. I was at Mr. Wordeman's house that evening to work on a car he was building.

"Q. Did anything else happen? A. Yes.

"Q. What? A. Several things happened.

"Q. Did anything happen with marijuana that evening? A. Yes. I was there when the police came to his home and arrested several people including myself.

"Q. For possessing marijuana? A. Right.

"Q. How many times during this period of September to the time you were arrested, January 23rd, did you have contact with Mr. Wordeman? A. He traded at my station occasionally and hard for me to say how many times.

"Q. Away from your station approximately how many times? A. Just once I know of.

"Q. You were arrested at that time. Is that when you were given a polygraph test? A. No.

"Q. What day was that you were arrested? A. On what charge?

"Q. On the narcotic charge we were just talking about? A. On 23rd?

"Q. Yes. A. That was on the 23rd.

"Q. Did you have marijuana in your possession that day? A. No, I didn't."

On behalf of defendant it is argued, proper cross-examination may go to any fact in issue or to the credibility of a witness; but since the prior arrest of defendant on another charge was not in issue, and since a mere arrest without more cannot be used to attack credibility, it was error to allow the line of questioning set out above. Eads v. State, 17 Wyo. 490, 101 P. 946, 950; and Rosencrance v. State, 33 Wyo. 360, 239 P. 952, 956, are relied upon as authority for such argument.

■ We realize mere charges, accusations, and arrests are consistent with innocence; and they should not be inquired into if the purpose of the prosecution is to discredit the witness in the eyes of the jury and convey to the jury knowledge that such witness was charged with a crime. That is not to say, however, that the prosecution in this case has done what stands condemned in *Eads* and *Rosencrance*.

This prompts us to look at the exact question objected to on behalf of defendant. The county attorney first asked: "Mr. Wright, you are very sure about this particular day? Do you remember what you were doing November 23rd?" Then, after the witness admitted seeing Wordeman November 23, he was asked the critical question: "What were you doing at that time?"

We can scarcely imagine a more appropriate question to test the memory of the witness, if the prosecution believed defendant was confused about what happened on November 17 and what happened on November 23; and there was reason for the prosecution so to believe. In any event, it must be observed there was nothing improper about the question which was asked. It did not inquire about an arrest.

■ The trial court indicated in its ruling that counsel for the state had a right to test the memory of the witness. It is indeed permissible on cross-examination to ask questions designed to test the soundness of a witness' testimony and the accuracy of his memory. Valdez v. Glenn, 79 Wyo. 53, 330 P.2d 309, 311, rehearing denied 332 P.2d 1119; Sanders v. Sitton, 179 Kan. 118, 292 P.2d 1099, 1102.

■ The question objected to was merely, what were you doing at that time (November 23)? After defendant was evasive in answering as to what he was doing and what happened November 23, the county attorney asked: "Did anything happen with marijuana that evening?" There still was no question about an arrest.

Of course, counsel for the defendant might have warned that this last question called only for a yes or no answer. Or, if he expected it to lead into the matter of an arrest of defendant on a charge other than the one for which defendant was being tried, he should not have remained silent. He should have made an objection.

Counsel had not previously asked for a continuing objection to future questions, when his objection was overruled on the question about what defendant was doing when he saw Wordeman November 23. Although counsel had previously suggested, this is going to be getting into "this other situation," the court had agreed maybe so and maybe not, but it was not at that time. This obviously left it to the defense to object at the proper time—if the prosecution asked an improper question about an arrest not related to the offense for which defendant was being tried.

The fact that counsel did not object when Wright was asked "Did anything happen with marijuana that evening?" makes us believe defendant's attorney did not expect the question to get into events pertaining to "this other situation."

After the witness answered the question in the affirmative, he then volunteered the statement "I was there when the police came to his home and arrested several people including myself." No request was made to strike the added statement, and no

request was made for the jury to be instructed to disregard it.

The exchange ended with Wright testifying he did not have marijuana in his possession on November 23; with him again saying Wordeman's testimony was false; and that the events Wordeman said happened did not happen at all.

In the absence of an objection when defendant was asked if anything happened with marijuana, and in the absence of a request for the jury to be instructed to disregard defendant's statement concerning an arrest on November 23, we can only assume defendant was at the time content to take his chances on a favorable decision by the jury. It is too late, after the verdict has gone against him, to raise objections not made at the time of trial. Valerio v. State, Wyo., 429 P.2d 317, 319; Webber v. Farmer, Wyo., 410 P.2d 807, 808–810.

### Rebuttal Testimony

Counsel for defendant-Wright complains that rebuttal testimony given by a police officer and the deputy county attorney was not proper rebuttal testimony but a part of the state's evidence in chief; and that the giving of this testimony as rebuttal evidence had a harmful effect on the jury.

The state makes quite a strong showing that all of the testimony questioned was proper rebuttal testimony because it tended to break down defendant's alibi and rebut defendant's evidence that he had no contact with Wordeman November 17. However, regardless of whether we would classify the testimony as evidence in chief or rebuttal evidence, counsel for defendant admits no objection was made when the evidence was offered. That would be reason enough not to consider an objection raised for the first time on appeal.

Section 7–228, W.S.1957, prescribes the order in which criminal trials shall take place. Following the provision for defendant to produce his evidence, the section states: "The state will then be confined to rebutting evidence unless the court, for good reasons, in furtherance of justice, shall permit it to offer evidence in chief."

Defense counsel recognizes a trial court generally is given considerable discretion in regard to the scope of rebuttal. We have been shown no persuasive reason or authority, however, for finding the trial court in this instance abused its discretion. In the absence of an objection at the trial level, defendant cannot now be heard to complain of an abuse of discretion. We have previously, in this opinion, cited authority for holding to this effect.

Having found no merit in either of defendant's two assignments of error, we must approve trial procedures.

Affirmed.

GRAY, Justice (concurring).

I concur in the result; however, I am unable to accept the proposition that counsel for the defendant consciously and intentionally waived the constitutional point of his premature general objection to a line of testimony rather cleverly designed by the prosecutor to bring out the arrest made on November 23, 1968, and the resulting charge of possession of marijuana. The state of the record leads me to believe that counsel was under the misapprehension that the trial judge had unqualifiedly ruled against him on that particular point. As shown by the majority opinion, no such ruling was ever made and thus in order to preserve the point on appeal counsel under many previous pronouncements by this court was duty bound to make an appropriate objection when the critical question was asked or to have moved to strike the answer volunteered by the defendant. Of course, present counsel for the defendant suggests that the incident was so fundamentally and basically erroneous that the omission should be disregarded, but as I view it the circumstances of this case are such that we are not warranted in acting upon our own motion.