Harry D. GABRIELSON, a/k/a Harry D. Garrison, Appellant (Defendant below),

v.

STATE of Wyoming, Appellee (Plaintiff below).

No. 4158.

Supreme Court of Wyoming.

May 29, 1973.

Terry W. Mackey, of King & Mackey, Jackson, for appellant.

Clarence A. Brimmer, Atty. Gen., George S. Andrews, Asst. Atty. Gen., Cheyenne, Robert B. Ranck, County Atty., Jackson, for appellee.

Before PARKER, C. J., and McEWAN, GUTHRIE and McINTYRE, JJ.

Justice McINTYRE delivered the opinion of the court.

The defendant, Harry D. Gabrielson, who is more commonly known by the name of Harry D. Garrison, was charged with the crime of aggravated assault and battery. On trial, the jury found him guilty of such offense and the court sentenced him to not less than 10 years nor more than 11 years in the penitentiary. From his conviction and sentence the defendant has appealed.

In the information filed against Garrison the county attorney charged in these words:

"* * * that Harry D. Garrison * * * did unlawfully violate the provisions of § 6–70(B) W.S.1957, entitled Aggravated Assault and Battery with a Dangerous Weapon, in that the defendant while armed with a knife and a pistol, [did] maliciously perpetrate an assault and an assault and battery upon John Swain in that John Swain and the defendant were driving back to Jackson from Wilson when the defendant made a homosexual advance to Swain. Swain resisted this advance and thereafter the defendant pulled a knife and started to cut Swain. The two fought and Swain started running away, whereupon the defendant fired 2 shots at Swain."

The defendant was charged with violating § 6–70, subd. B, W.S.1957, 1971 Cum. Supp. It reads as follows:

"B.—Whoever, while armed with a dangerous or deadly weapon, maliciously perpetrates an assault or an assault and battery upon any human being, shall be fined not more than one thousand dollars ($1,000.00), or be imprisoned in the penitentiary not more than fourteen (14) years, or both."

█ The defendant was charged with the crime of aggravated assault and battery with a dangerous weapon. On such a serious charge, he should not have been tried for making a homosexual advance or for being a homosexual. Thus, all language in the information pertaining to a homosexual advance should have been stricken, but the defendant failed to make a motion therefor.

The defendant did, however, prior to trial, make a motion in limine requesting that the prosecution be prohibited from introducing evidence, or making reference, or leaving the jury with the impression that the defendant committed or attempted a homosexual act with John Hammer Swain. The motion also asked that the prosecution be prohibited from introducing evidence of misconduct of the defendant which was not the subject of a criminal conviction; and that the prosecution be prohibited from making reference to the prior criminal record of the defendant.

The argument of Mr. Ranck, county attorney, in connection with defendant's motion in limine, indicates the prosecution did indeed intend to obtain a conviction of the defendant, at least in part, by evidence of prior homosexual conduct, where no conviction was involved. Mr. Ranck stated:

"I propose to ask Mr. Garrison six questions on cross-examination, and they will have to do with two prior felony convictions. They will have to do with the same type act with a 17 year old boy that he is charged with here today. The same thing."

The court then asked the county attorney if, on cross-examination, he proposed to ask the defendant concerning bad conduct of which there is no conviction. The answer was:

"Yes, but not only bad conduct now, conduct of a nature of about which is an issue in this trial. One of the very issues in this trial, not merely bad conduct."

It is apparent from the foregoing that the prosecution was considering the alleged homosexual tendency and record of defendant to be an important issue in the case. This view was incorrect. It was relevant only to the extent that it may or may not have supported the prosecuting

witness' testimony, disputed by defendant, that an attempt at a homosexual act provoked the assault and battery.

The principal assignment of error presented to us on appeal is that the trial court erred when it overruled defendant's motion in limine. The ruling was to the effect that the county attorney would be permitted to cross-examine the defendant as to prior convictions; and to inquire into prior misconduct of similar nature.

■ There are certain exceptions, and to some extent it is within the discretion of the trial court, as to whether a defendant who testifies can be questioned about prior *felony* convictions. Unless there is a special reason for allowing evidence of a prior conviction, testimony concerning prior felony convictions is for impeachment purposes only. That must not be lost sight of and juries should be so instructed.

■ As far as the present case is concerned, however, we find no reason to criticize the ruling of the trial court insofar as it indicated the county attorney would be permitted to cross-examine the defendant relative to prior felony convictions. Regarding the ruling that the county attorney could inquire into prior misconduct of a similar nature, however, it is settled law in this jurisdiction that mere charges, accusations, and arrests are consistent with innocence; and they should not be inquired into if the purpose of the prosecution is to discredit the witness in the eyes of the jury and convey to the jury knowledge that such witness was charged with a crime.[1]

The reason for not allowing inquiry into charges and accusations where no conviction resulted was well expressed in Rosencrance v. State, 33 Wyo. 360, 239 P. 952, 953:

"It is a dangerous species of evidence, not only because it requires a defendant

to meet and explain other acts than those charged against him and for which he is on trial, but also because it may lead the jury to violate the great principle, that a party is not to be convicted of one crime by proof that he is guilty of another."

The foregoing statement is particularly applicable to the Gabrielson trial because it appears quite probable that the defendant was convicted of aggravated assault and battery with a dangerous weapon on proof that he made a homosexual advance to Swain.

■■ As stated in Hawkins v. People, 161 Colo. 556, 423 P.2d 581, 581–582, the universal and well-understood rule is that evidence of general depravity is not admissible to prove the guilt of one charged with a crime. While a defendant who takes the stand may be impeached in this state by showing former convictions of a felony, the rule does not extend to admission of acts or occurrences which show bad character on the part of the defendant.

■ We have already made it clear that even evidence of prior felony convictions is ordinarily admissible only for impeachment purposes. Such evidence is not admissible for the purpose of showing the commission of the particular crime charged.[2] The general rule is that evidence of other crimes is inadmissible when it is offered solely to prove criminal disposition or propensity on the part of the accused, because the probative value of such evidence is outweighed by its prejudicial effect. People v. Kelley, 66 Cal.2d 232, 57 Cal.Rptr. 363, 424 P.2d 947, 953.

Thus, when sufficient facts pertaining to prior felony convictions have been established or admitted in cases where the accused has testified, it is not proper for the prosecution to dwell on the matter or "rub it in." As stated in McCormick on Evidence, 2nd Ed., § 43, p. 88, the more reasonable practice, minimizing prejudice and

1. See Wright v. State, Wyo., 466 P.2d 1014, 1016; Eads v. State, 17 Wyo. 490, 101 P. 946, 950; and Rosencrance v. State, 33 Wyo. 360, 239 P. 952, 956.

2. See 29 Am.Jur.2d, Evidence § 320, p. 336, and the many cases referred to in note 1.

distraction from the issues, is the generally prevailing one that beyond the name of the crime, the time and place of conviction, and the punishment, further details may not be inquired into.[3]

The United States Court of Appeals, Tenth Circuit, spoke on this subject in Martin v. United States, 10 Cir., 404 F.2d 640, 643 (1968), adopting this rule:

"Cross-examination of an accused as to collateral matters should properly be limited to an effort to discredit him as a witness, and the limit is exceeded when the questions are not useful for that purpose and the necessary result, and perhaps the purpose, is merely to prejudice the jury against the defendant."

Also, in United States v. Blair, 5 Cir., 470 F.2d 331, 339, the court in note 17 reminded the government that cross-examination regarding previous convictions, although proper for impeachment purposes where the defendant has taken the stand, must be carefully conducted lest, by overemphasis of the prior conviction, it unduly prejudiced the jury with a suggestion that defendant has a propensity to commit criminal acts.

And in United States v. Dow, 7 Cir., 457 F.2d 246, 250 (1972), it was said a defendant who takes the stand may be cross-examined as to his prior convictions to affect his credibility as a witness, but the examination should not be conducted in such a fashion as to prejudice the defendant before the jury. The court went on to say the examination must be limited to whether the defendant had previously been convicted of a felony, to what that felony was and to when the conviction was obtained. It was emphasized that guilt must be predicated upon evidence relevant to the offense charged, and not founded upon past crimes.

The ruling of the court on Gabrielson's motion in limine placed the defendant on the horns of a dilemma. If he did not testify to his previous felony convictions and if he did not testify that he had been pre-

viously accused of homosexual conduct, he knew from the court's ruling that the prosecution would go into both. Thinking it best for the admissions to come from his own lips, the defendant testified on direct examination that he had twice been convicted of felonies. He named the times, places, and crimes—burglary and larceny. He also testified he had been previously accused but not charged or convicted of homosexual conduct.

As we view the record, the court's ruling in connection with defendant's motion in limine led to a number of statements and questions from the prosecution which prejudiced the accused and placed him at a disadvantage, especially since the case turned largely on whether the jury was to believe the defendant's story or that of Swain.

■ Our opinion is that all of the questionable statements and questions referred to, taken as a whole, resulted in prejudice to the defendant to such an extent that a new trial is necessary. We will not, therefore, undertake to pinpoint particular reversible errors in this connection. Instead, we will list some of the happenings which helped to create the overall prejudicial effect.

1. The county attorney began his opening statement with the following:

"This is a case about a man, Mr. Garrison, or Gabrielson, whatever his name happens to be, who made a homosexual advance at another man; was resisted, became mad, drew his knife, and had a knife fight, and then he shot at the one who resisted."

2. On cross-examination of the defendant, the county attorney questioned him about the date he was born; and over objections, asked why he had a different date on his driver's license and why the Colorado State Penitentiary had a different birthdate. Questions were also asked, over objections, about the defendant's parole agent or parole supervisor in Colorado, such questions having no relevancy in

3. See also McArthur v. Cook, Fla., 99 So.2d 565, 567.

the case except to show bad character on the part of defendant. In this same cross-examination, over continued defense objections, the defendant was asked if he had ever made a homosexual advance to another man; and if he had used the name of Ronald Eugene Gleason in Los Angeles. Although Gabrielson answered that he had never been in Los Angeles, the damaging effect of the question may not have been entirely erased.

3. Despite the defendant having testified fully about his prior felony convictions, this was rehashed and emphasized by the county attorney on cross-examination. Also, numerous questions continued about defendant's parole agent; about his use of the name Garrison; and whether the defendant had three different social security numbers. In the meantime, defense counsel continued to object on the ground that these matters had no relevancy. The court asked about the relevance of social security numbers and the county attorney explained, in the presence of the jury: *"I believe* that this witness has used different names, different numbers, different birth dates \* \* \*." [Emphasis supplied.] There was no evidence to support the county attorney's belief; and it would appear unfounded and irrelevant questions were asked with no other purpose than to create the impression that the defendant was a person of bad character.[4]

4. Although an objection thereto was sustained, it would be hard to justify a question by the county attorney as to whether defendant, after his bank account was closed in Brush, Colorado, wrote eight no-account checks under the name of H. D. Garrison. It goes without saying that the sustaining of an objection to the question could not entirely erase the prejudicial effect the question in itself had.

■ 5. Particularly objectionable would be the following question which the prosecution asked of defendant:

"When asked by the Fort Collins Police Department on November 22, 1968, concerning an alleged homosexual act at or in the Northern Hotel, you refused to furnish a statement, did you not?"

No constitutional right of an accused person is more sacred than his right not to make a statement or testify against himself, and it was highly improper for any comment or question to be made or asked pertaining thereto.

6. The closing argument of the county attorney fairly well summarized the prejudicial occurrences we have been referring to and emphasized that the jury was expected to convict the defendant by reason of collateral attacks upon his character and the accusation of a homosexual advance, despite the fact that the conviction was expected to be for aggravated assault and battery with a dangerous weapon. The following is an excerpt from this closing argument:

"Was John Swain twice convicted of a felony? No, the defendant was. Who admitted on the stand that they had made a homosexual advance to another man? John Swain? No, the defendant. Who uses three dates of birth? John Swain? No, the defendant. Who for some reason has three Social Security numbers? John Swain? No, the defendant. Who refused to give authorities a statement? John Swain? No, the defendant. And you know some-

---

4. The opinion in McDonald v. State, Okl. Cr., 489 P.2d 776, 778, dealt with the matter of a "fishing expedition," where the prosecution asks innuendo questions and then drops the matter without proof. It was said, to allow this sort of examination would be to allow the imaginative and over-zealous prosecutor to concoct a damaging line of examination which could leave with the jury the impression that

defendant was anything the questions seemed to suggest. It was pointed out that no amount of denial on the part of a defendant would be able to erase the impression that the prosecution actually had such facts at hand and that probably there was some truth to the insinuations. See also State v. Hargrove, 81 N.M. 145, 464 P.2d 564, 566.

thing, that is how this thing, that is why we are here today, and that is what it is all about." [5]

Apparently the jury believed the matters mentioned in the foregoing excerpt were indeed "what it is all about." The matter of assault and battery with a dangerous weapon was not even included in "what it is all about." The happening of all we have enumerated above could not help having a cumulative effect prejudicial to the defendant who was charged with assault and battery with a dangerous weapon. The case must therefore be reversed.

Reversed.

GUTHRIE, Justice (concurring).

I concur in the foregoing opinion, but an examination of the record convinces me that additionally the defendant was denied a fair trial because of the commission of fundamental error, which the writer deems of paramount importance and which should not pass unnoticed.

Twice during the trial hereof there was evidence adduced by the State that the defendant had refused to make a statement to the authorities in connection with this matter. We find the volunteered statement of Deputy Reach in response to a question as to what inquiry he had made of the defendant as to why his left leg was bandaged as follows:

"After I read or recited the Miranda warning to him, he refused to say anything to me."

Later, in cross-examining the defendant, the county attorney propounded the following question and received the answer as set out hereafter:

"Q. When questioned by the Sheriff's Office on June 26, 1972, concerning this matter, you refused to make a statement, did you not?

"A. I did."

Additionally, in pursuing the matter of an alleged homosexual offense in Ft. Collins, I find this inquiry being made of the defendant:

"Q. When asked by the Fort Collins Police Department on November 22, 1968, concerning an alleged homosexual act at or in the Northern Hotel, you refused to furnish a statement, did you not?"

Under no theory or rule of law which is known to this writer could these matters have been relevant for any purpose and the only effect thereof would have been prejudicial. Not content to let these matters rest, and demonstrating the purpose for which said questions were propounded, we find in the summation by the prosecuting attorney these comments:

"The defendant never went to the police. In fact, when they went to him he refused to give them a statement. He was not interested in cooperating. Why not?"

Apparently believing this necessary of emphasis, later in the argument the following appears:

"Who refused to give the authorities a statement? John Swain? No, the defendant."

Thus, we are confronted with a clear case wherein defendant's exercise of a constitutional right under the Fifth Amendment to the United States Constitution was utilized to penalize him. The chilling effect of such a procedure on the exercise of such a right needs no demonstration. A constitutional guaranty indeed becomes barren and valueless if by the assertion thereof it can

---

5. See People v. Parish, 6 Ill.App.3d 587, 285 N.E.2d 606, 608–609, where it was said any lingering doubt that the prosecutor's cross-examination was directed solely to discrediting the defendant as an individual in the eyes of the jury is completely dispelled by his final argument. The conclusion in that case was that defendant had been tried to a large extent on the basis of his record and not on the facts of the crime with which he was charged. The court said final argument is improper and highly prejudicial where the jury is informed of crimes or acts of misconduct of an accused which are distinct and entirely unrelated to the one for which he is being tried.

be utilized to his detriment. The nature of this right and the demonstration of its importance and fundamental character is settled by Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 1624–1625 (particularly footnote 37), 16 L.Ed.2d 694, 10 A.L.R.3d 974. See also Jones v. State, Fla.App., 200 So. 2d 574, 576. A discussion involving this question appears in State v. Ritson, 210 Kan. 760, 504 P.2d 605, 611:

> "There can be no doubt that the interjection of this evidence was error. Its sole purpose was to show that when defendant was confronted with evidence contradicting his alibi he had refused to talk and demanded counsel. It was clearly a use of defendant's invocation of his constitutional rights to silence and to counsel as substantive evidence of guilt—otherwise it had no probative value as rebuttal of defendant's story. Such a use is not permissible under Miranda v. Arizona, 384 U.S.. 436, f.n. 437, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974; and * * * [Citations].

> "The only question here is whether it is harmless error. The error being of constitutional character, it is not harmless if 'there is a reasonable possibility that the evidence complained of might have contributed to the conviction.' [Citation.] Put another way, to be harmless it must be 'harmless beyond a reasonable doubt.' [Citation.] The latter case also holds that this is a constitutionally imposed standard for determining whether error may be deemed harmless."

Although no objection was made at the time of trial to this argument to the jury, because this was a flagrant violation of a fundamental constitutional right, it is cognizable by this court. This court has heretofore held that it has both a right and duty to decide a cause upon a point not raised below where the matter is fundamental, Steffens v. Smith, Wyo., 477 P.2d 119, 121. This rule was enunciated in a civil matter but to the writer there is a much more compelling reason for its application in a criminal case. This power is recognized in other jurisdictions, State v. Sena, 54 N.M. 213, 219 P.2d 287, 289; Tyler v. State, 74 Okl.Cr. 39, 122 P.2d 826, 827; Morrison v. State, 37 Okl.Cr. 359, 258 P. 1050; Jones v. State, supra.

Because of the impingement of defendant's constitutional right by examination in violation of the Fifth Amendment to the United States Constitution and Art. 1, § 11, Wyoming Constitution, and the emphasis placed thereon in argument, it is the opinion of this writer that the State has utterly failed in its duty to grant defendant a fundamentally fair trial upon this charge.