Jack B. BRITTON, Appellant (Defendant),

v.

The STATE of Wyoming, Appellee (Plaintiff).

No. 5617.

Supreme Court of Wyoming.

April 21, 1982.

Robert W. Costin, Laramie, for appellant.

Steven F. Freudenthal, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., Crim. Div., Allen C. Johnson, Senior Asst. Atty. Gen., Terry J. Harris, Legal Intern, Cheyenne, and Kennard F. Nelson, Deputy Albany County Atty., Laramie, for appellee.

Before ROSE, C. J., RAPER, THOMAS, ROONEY and BROWN, JJ.

BROWN, Justice.

Mr. Britton was convicted after a jury trial of violating § 6-4-302, W.S. 1977, first-degree sexual assault. He appeals from the conviction, alleging error in the trial court's failure to give a proposed instruction, and alleging error in the trial court's charge to the jury before deliberations were to begin.

We will affirm.

## I

Appellant presented his proposed Instruction A both at pretrial conference and at the close of the evidence. The trial judge refused to give the proposed instruction, and appellant objected. He does not argue plain error on appeal, as he apparently thinks he adequately preserved his objection.

Rule 31, W.R.Cr.P., provides that the giving of instructions and lodging of objections thereto is to be done pursuant to Wyoming Rules of Civil Procedure. Rule 51, W.R. C.P., provides:

" * * * No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection. * * * "

■■■ The rule exists so that the trial court has the opportunity to correct or clarify possibly erroneous instructions. *Downs v. State*, Wyo., 581 P.2d 610 (1978). Appellant objected to the trial judge's refusal to give his proposed Instruction A; however, he had a duty to make a specific legal objection if he wanted to preserve the issue for appeal, which he failed to do. *Schwager v. State*, Wyo., 589 P.2d 1303 (1979); and *Leitel v. State*, Wyo., 579 P.2d 421 (1978). The record is devoid of appellant's stating any grounds for the objection, and for that reason, the objection was inadequate. The plain error rule therefore applies on appeal. *Ketcham v. State*, Wyo., 618 P.2d 1356 (1980). Rule 49(b), W.R.Cr.P., provides that plain error or defects affecting substantial rights may be noted although they were not brought to the attention of the court.

■■■ The requirements for plain error are that the record must be clear as to what happened at the trial level, the error must involve a clear rule of law, and the facts of the case must clearly violate the rule. Once these requirements are met, the appellant still bears the burden of showing that a substantial right was adversely affected. *Brown v. State*, Wyo., 581 P.2d 189 (1978); and *Daellenbach v. State*, Wyo., 562 P.2d 679 (1977). The plain error rule, as this court has stated many times, is to be applied sparingly and only in exceptional circumstances. *Ketcham v. State*, supra; and *Hampton v. State*, Wyo., 558 P.2d 504 (1977). In this case there was no error at all, and certainly no clear violation of a clear rule of law.

■■■ Part of appellant's proposed Instruction A read:

"The State has offered evidence that the complaining witness, the female person involved, was forced to engage in sexual intercourse.

"*The defendant has offered evidence that confirms the fact of intercourse* and penetration with the complaining witness, *but that she was willing and consented to this act.*" (Emphasis added.)

The trial judge correctly refused to give this instruction, which in effect would have told the jury how to decide the case. The instruction asserts that the ultimate factual question in this case, the question of the victim's consent, had already been proved, and the trial court would certainly have been invading the province of the jury had it given the instruction. As we said in *Meyer v. Kendig*, Wyo., 641 P.2d 1235 (1982), an opinion or evaluation of the ultimate issue to be decided by the jury is inadmissible, regardless of how it is presented. We can well see that a defendant would be delighted to have such an instruction given to the jury, it being the virtual equivalent of the granting of a motion for acquittal.

The rest of appellant's proposed Instruction A read:

"You are instructed that resistance is not necessary under circumstances where resistance would be futile and would endanger the life of the female, or where she is overcome by superior strength or paralyzed by fear.

"You are further instructed that all she is required to do is to resist until such time as she is convinced something of a more serious nature will happen; she is then given by law the right to submit.

"You are further instructed that fear must be of death or severe bodily harm,

and she must have a reasonable apprehension and her fear must not be fanciful, but substantial."

Appellant contends that failure to give proposed Instruction A was also error because the instructions must say that the victim has to be in fear of death or severe bodily harm before she may stop resisting the assault.

█ In addition to the fact that the first part of the instruction was incorrect, appellant overlooks the fact that the principles embodied in the latter part of his proposed Instruction A are covered by other instructions. Even had the whole instruction been correct, a trial court may refuse proposed instructions which are correct as long as the principles embodied in the requested instructions are covered by other instructions. *Scheikofsky v. State*, Wyo., 636 P.2d 1107 (1981); and *Campbell v. State*, Wyo., 589 P.2d 358 (1979). In this case, the trial court gave Instruction No. 6 on the statutory crime of sexual assault in the first degree, § 6-4-302, W.S. 1977. Part of that instruction read:

"(a) Any actor who inflicts sexual penetration on a victim commits a sexual assault in the first degree if:

"(i) The actor causes submission of the victim through the actual application, reasonably calculated to cause submission of the victim, of physical force."

The trial court also gave Instruction No. 7 on the necessary elements of the crime, which read in pertinent part:

"3. The Defendant caused submission of * * * [the victim] through the actual application of physical force which was reasonably calculated to cause submission of * * * [the victim]."

█ These instructions speak to the objective standard which applies for the jury to assess the reasonableness of the victim's belief that an assailant is going to harm her. They accomplish the same purpose as does the latter part of appellant's proposed Instruction A. As we said in *Heinrich v. State*, Wyo., 638 P.2d 641 (1981), the jury must be instructed on the law in language it can understand. We also said there that an instruction which followed the statutory language of § 6-4-302, W.S. 1977, was sufficient to instruct the jury on force. Here, during cross-examination by defense counsel, the victim testified that she had been in fear of serious bodily harm. Further, there is no evidence in the record that the victim ever discontinued her resistance. Consequently, the proffered instruction could not have been given because it was not supported by any evidence. *State v. Selig*, Wyo., 635 P.2d 786 (1981).

II

█ The record showed that while the jury was deliberating, they sent a note to the judge:

" 'We need to know if reasonably calculated would include a thin-skulled doctrine, i.e.: If the force the Defendant used was less than he would or would have reasonably calculated to be necessary to rape a "normal victim"? Then: Since his "victim" could not resist in the same way, does this excuse him from first degree sexual assault?' "

The testimony showed that the victim had a bad back, and that after she was forced to lie on her back, she could not get back up, which apparently led the jury to ask the "thin-skulled" question. When the question was brought to the trial judge, he advised both counsel of it. He also informed counsel that he intended to have the bailiff tell the jury that he could not answer the question and that they would be bound by the instructions as given them. The judge then asked if that was satisfactory with counsel, and both replied that it was. The judge also asked appellant if that procedure was satisfactory with him, and appellant replied that it was. Appellant now claims that the question from the jury showed that it was confused and did not understand Instruction No. 10, which stated:

"Consent by the person assaulted is a defense to the charge of sexual assault in the first degree. The defense of consent involves two separate elements:

"1. That * * * [the victim] did voluntarily consent to the act by word or conduct; and

"2. That * * * [the victim] had the present ability to consent.

"Submission alone may not be consent.

"The State has the burden to prove beyond a reasonable doubt that there was no consent by * * * [the victim]."

Section 1–11–209, W.S. 1977, does require the trial judge to answer questions from the jury in certain instances:

"After the jurors have retired for deliberation, * * * if they desire to be informed as to any part of the law arising in the case, they may request the officer to conduct them to the court where information upon the matter of law shall be given. * * * "

The thin-skulled doctrine is a tort concept and is not applicable here.[1] It does not constitute "law arising in the case," and the judge did not have an affirmative duty to give the jury information on the doctrine. The instructions which had already been given adequately and correctly stated the law arising in the case. The trial judge's referring the jury back to the instructions was n ot error, especially in view of appellant's consent to the trial judge's action and in view of his assertion now that the trial judge should have cleared up any confusion by sending to the jury appellant's proposed Instruction A, an incorrect instruction.

Appellant also contends that because the jury was confused, he did not have his theory of the case presented to them adequately. A defendant has the right to have his theory of the case affirmatively presented to the jury, provided that the offered instruction is sufficient to inform the court of the defendant's theory and provided that there is competent evidence in the record to support it. *Scheikofsky v. State,* supra; and *Goodman v. State,* Wyo., 573 P.2d 400 (1977). Here, though, the proposed Instruction A was incorrect. The trial court instead gave Instruction No. 10 set out above. It is hard to imagine how appellant's theory of the case could have been set out any more clearly.

### III

Appellant has tried to get a lot of mileage out of the trial court's refusal to give this one proposed instruction, considering that the instruction was erroneous and that he failed to adequately preserve the issue for appeal. We might have had a difficult time imagining a less meritorious argument, but appellant has saved us the trouble with his final contention on appeal that the trial judge coerced the jury into reaching a quick decision. At the end of testimony, the trial judge said that in the morning he would instruct the jury on the law of the case and that the jury would then begin its deliberation. He further stated:

"You may finish by noon, if you don't finish by noon we've got Arby's sandwiches for you so that it doesn't take much time. That's easier than sending you out to eat, to be honest with you. But, you would deliberate on through until you reach a decision. I tell you that so you can tell your folks you may or may not be home at noon tomorrow."[2]

---

1. Restatement (Second) of Torts, § 461 (1965), sets out the "thin-skulled" doctrine, which says that the tortfeasor takes his victim as he finds him.

   "The negligent actor is subject to liability for harm to another although a physical condition of the other which is neither known nor should be known to the actor makes the injury greater than that which the actor as a reasonable man should have foreseen as a probable result of his conduct."

   See also *Lee v. Regan,* 47 N.C.App. 544, 267 S.E.2d 909, 912 (1980):

   " * * * Our State recognizes the 'special sensitivity' or 'thin skull' rule. According to this rule, a negligent defendant is subject to liability for harm to the plaintiff although a physical condition of plaintiff which is neither known nor should be known to defendant makes the injury greater than that which defendant as a reasonable man should have foreseen as a probable result of his conduct. * * * "

2. It may in fact have been to appellant's advantage to promise a repast:

   " 'I wonder what the foreman of the jury, whoever he'll be, has got for breakfast,' said Mr. Snodgrass. * * * 'Ah!' said Perker, 'I hope he's got a good one.' 'Why so?' in-

Appellant posits that since the jury took only about one and one-fourth hours to reach a verdict, the jury construed the judge's statement to mean that they were supposed to reach a verdict by noon. We need not notice a claimed error unsupported by authority or cogent argument. *Weddle v. State*, Wyo., 621 P.2d 231, 236 (1980). Appellant obviously cites no authority or cogent argument. As appellee summed up appellant's argument: " * * *

We should not assume that the jurors felt threatened or endangered by the possibility of having to eat Arby's sandwiches."

We affirm.

---

quired Mr. Pickwick. 'Highly important—very important, my dear Sir,' replied Perker. 'A good, contented, well-breakfasted juryman, is a capital thing to get hold of. Discontented or hungry jurymen, my dear Sir, always find for the plaintiff [the State here].' " Charles Dickens, *Pickwick Papers*, ch. 34.

Remarkable progress has been made in the care and feeding of juries. In the reign of Edward I, 1272–1307, English juries were prohibited from having " 'meat, drink, or fire * * *' " until after they had arrived at a verdict. Forsyth, "Trial by Jury" p. 201 (Frederick D. Linn & Company, 1875).