Michael J. WESTMARK,
Appellant (Defendant),

v.

The STATE of Wyoming,
Appellee (Plaintiff).

No. 83–256.

Supreme Court of Wyoming.

Dec. 27, 1984.

Leonard D. Munker, State Public Defender, and Sylvia Lee Hackl, Appellate Counsel, Wyoming Public Defender Program, Cheyenne, for appellant.

A.G. McClintock, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., John W. Renneisen, S. Asst. Atty. Gen., Margaret M. White, Asst. Atty. Gen., Cheyenne, for appellee.

Before ROONEY, C.J., and THOMAS, ROSE, BROWN and CARDINE, JJ.

ROSE, Justice.

Appellant Michael J. Westmark was convicted by a jury of attempted second-degree murder and assault and battery. He urges the following issue on appeal:

"[Whether] appellant's constitutional right to remain silent was violated by the prosecutor's impermissible comments during trial."[1]

The appellant charges that it was error to allow the following interrogation:

"Q. Isn't it true, Mr. Westmark, that nobody has ever heard this self defense story prior to your actually relating it for the first time here in Court today?

"A. Mr. Mealey.

"Q. It's true that you never mentioned anything to the officers at the time you were arrested, isn't it, regarding that?

"A. That's true.

"Q. Okay. Isn't it true that you never told any officers that you stabbed anybody in self defense that night? True or false?

"A. My attorney had advised me not to talk to the police officers concerning this matter.

"Q. But, Mr. Westmark, you didn't have an attorney at the time you were pulled over on the highway, did you?

"A. No, sir, I didn't.

"Q. And at that point in time, you didn't tell anybody about a stabbing or self defense, did you?

"A. No, sir, I didn't.

"Q. In fact, the first time that story has been related to anybody is right in this courtroom today; isn't it?

"A. No, sir."

During the State's case-in-chief, appellant's silence at the time of arrest regarding self-defense was alluded to by questions from the prosecutor and answers by a police officer as follows:

"Q. At that point, did the Defendant, or any time during the course of your conversation with the Defendant, raise the issue that he had been acting in self defense?

"A. No. He didn't.

"Q. Did he ever mention self defense?

"A. No. He didn't."

During summation, the prosecutor for a third time brought to the jury's attention the fact that Westmark had not told the officers about his claim of self-defense. He said:

"* * * If the defendant had, in fact, acted in self defense twice within the past hour, why didn't he say so? He could have said, 'Yes, there has been a stabbing and that guy attacked me.'"

This interrogation and these remarks by the prosecutor lead unfailingly to the conclusion that little if any attention has been paid to that which this court has said about respecting the constitutional right of the citizen-accused to *not* have his silence called to the jury's attention. Since we overruled *Clenin v. State*, Wyo., 573 P.2d 844 (1978) in *Richter v. State*, Wyo., 642 P.2d 1269 (1982), where we held that such violations were not necessarily prejudicial and, under some fact situations, constitute harmless error, our attention has been called to far too many instances where prosecutors seem to be playing "Russian roulette"[2] with this impermissible practice. The game seems to be that prosecutors will take the chance and ask about or comment upon silence even though they know that these interrogations are impermissible as being in violation of the defendant's Fifth Amendment rights to the federal constitution[3] and his Art. 1, § 11, Wyoming constitutional rights[4]—on the theory that the

---

1. The appellant identified a second issue which we will not address in view of our disposal of the question which concerns the defendant's right to remain silent and the prosecutor's error in commenting thereon.

2. Webster's Third New International Dictionary defines "Russian roulette" as follows:

   "[A]n act of bravado consisting of spinning the cylinder of a revolver loaded with one cartridge, pointing the muzzle at one's own head, and pulling the trigger."

3. The Fifth Amendment to the Constitution of the United States reads:

   "No person shall be * * * compelled in any criminal case to be a witness against himself * * *."

4. Article 1, § 11 of the Wyoming Constitution reads:

   "No person shall be compelled to testify against himself in any criminal case * * *."

Supreme Court in all probability will hold the error to be harmless.

No more.

■ We herewith return to the rule of *Clenin v. State*, supra, and will hold that any comment upon the accused's exercise of his or her right to remain silent is prejudicial error which will entitle the accused to a reversal of the conviction.[5]

We will reverse Westmark's conviction and remand for a new trial.

Appellant Westmark did not register an objection to the questions which were put to him by the prosecutor on direct and cross-examination, nor did he object to the remarks made by the State's attorney in summation. Therefore, the issue of appellant's right to remain silent comes here under the plain-error doctrine. Rule 49(b), W.R.Cr.P.; Rule 7.05, W.R.A.P.[6]

In this assignment of error we must determine

(a) if the questions to a police officer on direct examination and cross-examination of appellant and the prosecutor's remarks in summation constituted error; and

(b) if we find error we must next determine if the plain-error doctrine applies.

### The Questions and Comments on Silence Constituted Error

It is Westmark's contention that the above-recited questions during direct and cross-examination and comments during summation are in violation of his rights as those rights are contained in the Fifth Amendment to the Constitution of the United States, as made applicable to the states by the Fourteenth Amendment and under Art. 1, § 11 of the Wyoming Constitution. This claim is based upon *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976). In Doyle, the Court said:

"We hold that the use for impeachment purposes of petitioners' silence, at the time of arrest and after receiving Miranda warnings, violated the Due Process Clause of the Fourteenth Amendment." 426 U.S. at 619 [96 S.Ct. at 2245].

■ In Wyoming, the question of whether or not the defendant was advised of his constitutional right to remain silent is not relevant to his assertion of this right. In a part of the *Clenin* opinion that was *not* overruled by *Richter*, we said:

"The record does not disclose whether Clenin was advised of his constitutional rights by a law enforcement officer. There are comments in *Doyle v. Ohio*, supra, and in some of the cases following it, which discuss the significance of that advice in relation to trial interrogation about the failure to furnish information to law enforcement officials. The right of an accused to remain silent, however, under Art. 1, § 11 of the Constitution of the State of Wyoming, which provides: 'No person shall be compelled to testify against himself in any criminal case, * *,' does not depend upon his being advised of that right, but exists by virtue of the constitutional language. Advice as to that right by law enforcement officers or by the justice of the peace or by the judge of the district court is only for the purpose of expanding its protection by assuring that the accused person is aware of it." 573 P.2d at 846.

■ Thus, in Wyoming, the wording of Art. 1, § 11 of our Constitution brings with it the implicit assurance that silence will carry no penalty and therefore it would be "unfair and a deprivation of due process"[7] to permit the defendant's silence to be used to impeach his exculpatory testimony offered at trial.

This court has long been concerned about the problem at hand in this appeal—philosophically, factually and from the pure le-

---

**5.** Paraphrasing the language contained in the *Clenin* opinion, supra.

**6.** Rule 49(b), W.R.Cr.P. and Rule 7.05, W.R.A.P. read:

"Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."

**7.** *Doyle v. Ohio,* supra, 426 U.S. at 618, 96 S.Ct. at 2245.

gal point of view. In *Jerskey v. State,* Wyo., 546 P.2d 173, 175 (1976) we said:

"The theory of the privilege against self-incrimination is a good, high-principled concept aimed at the preservation of the very most basic of the individual's rights in a democratic society and one which should be readily embraced by all of us."

We remembered that *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974 (1966) *referred to Escobedo v. Illinois,* 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964). The *Miranda* Court said:

" * * * That case was but an explication of basic rights that are enshrined in our Constitution—that 'No person * * * shall be compelled in any criminal case to be a witness against himself,' and that 'the accused shall * * * have the Assistance of Counsel'—rights which were put in jeopardy in that case through official overbearing. These precious rights were fixed in our Constitution only after centuries of persecution and struggle. And in the words of Chief Justice Marshall, they were secured 'for ages to come, and * * * designed to approach immortality as nearly as human institutions can approach it,' *Cohens v. Commonwealth of Virginia,* 6 Wheat. 264, 387, 5 L.Ed. 257 (1821)." 384 U.S. at 442–443 [86 S.Ct. at 1611].

In *Jerskey,* we pondered the evil which is described when courts ignore or do not assign the intended importance to such rights as those embodied in the Fifth Amendment to the United States Constitution and Art. 1, § 11 of the Wyoming Constitution when we said:

"It is because of these ancient tendencies by which men in possession of the powers of government seek, with the weaponry of government, to impose their will upon those whom they govern (or 'serve') that the protections embodied in the Federal Fifth Amendment and the Wyoming Constitution, Article 1, Section 11, were needed.

"The evil is so often spawned in the name of the law and the pursuit of the public order as expressed by officials who are engaged in doing what is 'good,' 'right,' 'fair,' 'in the public interest,' or who are so often 'just doing their duty.' However, when public officials adopt their own ideas about morality as standards for adjudicating the righteousness of others—absent the guidelines furnished by the common and statutory law pool of experience contributed to by all civilized people—the 'good,' the 'right,' and the 'fair' become the *expedient.* The standard for the successful society is then judged according to the end result with precious little attention being paid to the manner by which it is achieved and to how many heads may have fallen into the basket in the process. Government becomes ultra powerful and the citizen is relegated to the least rather than the most important unit of the social order. The fragile cobwebs of human rights become misty visions which tend to blend with the ghosts of some public official's private opinion of what is 'good,' 'fair,' 'right,' and 'just' until they become imperceptible and—at last—are no rights at all." 546 P.2d at 177.

In Wyoming we have said that, unless there is a clear, unmistakable, knowledgeable waiver of the defendant's constitutional right to remain silent, silence may not be used against him in trial—and to do so is error. *Jerskey v. State,* supra.

Prior to *Jerskey,* this court said in *Gabrielson v. State,* Wyo., 510 P.2d 534, 538 (1973) (decided before *Doyle*):

"No constitutional right of an accused person is more sacred than his right not to make a statement or testify against himself, and it was highly improper for any comment or question to be made or asked pertaining thereto."

Justice Guthrie, concurring in *Gabrielson,* was particularly concerned with trial comments upon the defendant's exercise of his right to remain silent and said:

" * * * The chilling effect of such a procedure on the exercise of such a right needs no demonstration. A constitutional guaranty indeed becomes barren and

valueless if by the assertion thereof it can be utilized to his detriment." 510 P.2d at 539–540.

The concurring opinion utilized *State v. Ritson*, 210 Kan. 760, 504 P.2d 605, 611 (1972), where the Kansas court said:

"There can be no doubt that the interjection of this evidence was error. Its sole purpose was to show that when defendant was confronted with evidence contradicting his alibi he had refused to talk and demanded counsel. It was clearly a use of defendant's invocation of his constitutional rights to silence and to counsel as substantive evidence of guilt—otherwise it had no probative value as rebuttal of defendant's story. Such a use is not permissible under *Miranda v. Arizona*, 384 U.S. 436, f.n. 437, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974; and [citations]."

We reversed and remanded in *Irvin v. State*, Wyo., 560 P.2d 372 (1977), where, during cross-examination of the defendant, the prosecutor asked why he had not told the police about the alibi which he first brought out in his defense. We held that this conduct violated the defendant's federal and state constitutional right to remain silent under *Doyle v. Ohio*, supra, with two concurring opinions also citing *Jerskey v. State*, supra, and *Gabrielson v. State*, supra, as Wyoming authority for the court's holding.

Impermissible Comment Is Plain Error

▮ We find the prosecutor's examination and comments upon Westmark's silence to constitute plain error within Rule 49(b), W.R.Cr.P. and Rule 7.05, W.R.A.P., supra n. 6. The applicable guiding criteria, when an appellant seeks review under the plain-error doctrine, are (1) that the record reflects clear and unequivocally the fact complained of; (2) that the facts prove a transgression of a clear rule of law; (3) that the error affects a substantial right of the accused; and (4) that the defendant has been materially prejudiced by that violation. *Marshall v. State*, Wyo., 646 P.2d 795 (1982); *Britton v. State*, Wyo., 643 P.2d 935 (1982); *Bradley v. State*, Wyo.,

635 P.2d 1161 (1981); *Harris v. State*, Wyo., 635 P.2d 1165 (1981); *Settle v. State*, Wyo., 619 P.2d 387 (1980); *Ketcham v. State*, Wyo., 618 P.2d 1356 (1980); *Madrid v. State*, Wyo., 592 P.2d 709 (1979). Almost without further comment, it is apparent from the foregoing that elements (1), (2) and (3) are present. The statement and witness examinations of the prosecutor furnish the undisputed facts of which Westmark complains; the facts establish a transgression of the rights of the defendant and a transgression of the Fifth Amendment to the United States Constitution and Art. 1, § 11 of the Wyoming Constitution as they pertain to the aforesaid facts (see authorities discussed supra); and the rights under the aforesaid constitutional provisions are the rights that have been affected. This leads to a discussion with respect to whether the comments and examinations were prejudicial.

Impermissible Comment Is
Prejudicial Error

The very same impropriety was before this court in 1978 where, in *Clenin v. State*, supra, we remembered that we had jealously guarded the right provided in Art. 1, § 11 of the Constitution of the State of Wyoming against any infringement, citing *Irvin v. State*, supra; *Jerskey v. State*, supra; *Dryden v. State*, Wyo., 535 P.2d 483 (1975); *Moss v. State*, Wyo., 492 P.2d 1329 (1972); *Priestley v. State*, Wyo., 446 P.2d 405 (1968); *Dickey v. State*, Wyo., 444 P.2d 373 (1968); and *Miskimins v. Shaver*, 8 Wyo. 392, 58 P. 411, 49 L.R.A. 831 (1899).

In reponse to argument that in *Clenin* the prosecutor did not dwell upon the defendant's assertion of his constitutional right to remain silent as was the case in *Irvin v. State*, supra, and therefore any error should be regarded as harmless, we said:

" * * * [W]e hold that the cross-examination in and of itself invokes the rule of *Irvin v. State*, supra, and *Doyle v. Ohio*, supra. A number of states have applied that rule to circumstances which were similar to the facts of this case and to

those shown in *Irvin v. State*, supra. *State v. Scott*, 27 Ariz.App. 361, 555 P.2d 118 (1976); *State v. White*, 97 Idaho 708, 551 P.2d 1344 (1976), cert. den., 429 U.S. 842, 97 S.Ct. 118, 50 L.Ed.2d 111 (1976); *Jones v. State*, Ind., 355 N.E.2d 402 (1976). *State v. Mims*, 220 Kan. 726, 556 P.2d 387 (1976); *Warthen v. State*, Okl. Cr., 559 P.2d 483 (1977); *State v. Upton*, 16 Wash.App. 195, 556 P.2d 239 (1976); *State v. Boyd*, W.Va. [160 W.Va. 234], 233 S.E.2d 710 (1977)." 573 P.2d at 846. Referring specifically to Art. 1, § 11 of Wyoming's Constitution, we went on to say in *Clenin:*

"We hold that under this section of our state constitution any comment upon an accused's exercise of his right of silence, whether by interrogation of the accused himself, or by interrogation of others inherently is prejudicial, and will entitle an accused to reversal of his conviction. Such a breach of the accused's constitutional protections is plain error and prejudicial per se. While, in the light of the language of *Doyle v. Ohio*, supra, this may represent an extension of the rule of that case, it is our prerogative to so do in applying our state constitution. See, e.g., *Oregon v. Hass*, 420 U.S. 714, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975); *People v. Disbrow*, 16 Cal.3d 101, 127 Cal.Rptr. 360, 545 P.2d 272 (1976); *State v. Santiago*, 53 Haw. 254, 492 P.2d 657 (1971); *Commonwealth v. Triplett*, 462 Pa. 244, 341 A.2d 62 (1975). To the extent that we have gone beyond the factual background for the rule of Doyle v. Ohio, supra, in discussing the effect here of questioning about the failure to advise the county attorney of the alibi defense in the light of the advice by the justice of the peace and the district judge, we deem that error also to be plain error and fundamental error." 573 P.2d at 846–847.

■ For the reasons indicated, this court is now forced to overrule *Richter v. State*, Wyo., 642 P.2d 1269 (1982), and return to the *Clenin* doctrine. In so doing we have no problem in finding the error committed by the prosecutor to have been prejudicial. *Clenin* holds in a parallel situation, and thus we hold here, that the examination and closing-argument comments by the prosecutor upon Westmark's exercise of his right of silence are "inherently * * * prejudicial" and are "prejudicial per se."

In closing this opinion, it is perhaps worthwhile to note that, while we have great reluctance to cause the various counties and the court system to go to the expense of new trials where prosecutorial misconduct is at issue, nevertheless we will not be reluctant to reverse convictions where such misconduct results in the flagrant violation of the constitutional rights of our citizens.

Reversed and remanded for a new trial.

THOMAS, Justice, specially concurring.

I concur in the disposition of this case as reflected in the majority opinion. I do not find, however, that the majority opinion specifically articulates the proposition, which I espoused in my concurring opinion in *Richter v. State*, Wyo., 642 P.2d 1269, 1277 (1982), that the rule of *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 48 L.Ed.2d 91 (1976), adopted by this court in *Irvin v. State*, Wyo., 560 P.2d 372 (1977), and *Clenin v. State*, Wyo., 573 P.2d 844 (1978), is limited to post-arrest silence by the accused. I wish to make it clear that my concurrence in the disposition of this case does not indicate that I have receded from my position in Richter v. State, supra. The interrogation in this case encompassed both pre-arrest and post-arrest silence. Since, under our cases these questions result in prejudicial error with respect to post-arrest silence, the disposition as reflected in the majority opinion is ineluctably correct.

BROWN, Justice, specially concurring, joined by ROONEY, Chief Justice.

I agree with the majority that this case must be reversed; however, I disagree with the rule of law established in the majority opinion. I do not believe overruling *Richter v. State*, Wyo., 642 P.2d 1269 (1982) is warranted, and it is unnecessary

in the reversal of this case. In *Richter* we said:

> "Here, the prosecutor asked Ronald Richter whether he volunteered his version of the events upon his arrest to the police. An objection was immediately made and sustained. The jury was not thereafter told whether he did or did not tell the police anything. Further, the jurors were instructed to disregard the question. No mention of the question was again made. The matter of silence was not exploited by the State. Since it was one isolated comment which was ambiguous, and since the evidence of appellant's guilt was overwhelming, we believe it is appropriate in this case to uphold the trial court's determination not to grant a mistrial. We firmly believe that there was no reasonable possibility that the error made any difference in the outcome of the trial. Accordingly we hold that the rule of harmless error is available and that in this case the error was harmless beyond a reasonable doubt. * * * " *Richter v. State,* supra, at 1275.

Here, the prosecutor persisted in referring to appellant's silence. There were five questions on cross-examination and two on direct examination, all focusing on appellant's silence or his failure to tell the officers of his self-defense theory. The questions were not ambiguous, and, in fact, elicited answers. In contrast to *Richter v. State,* supra, the prosecutor here exploited appellant's silence by referring to it in his summation, and no corrective instruction was given. I do not view the evidence of guilt to be overwhelming; in fact, it was rather thin. I believe that the errors in this case fall within the plain error doctrine, and meet the three criteria required by *Browder v. State,* Wyo., 639 P.2d 889 (1982); and *Hampton v. State,* Wyo., 558 P.2d 504 (1977). The record clearly shows what happened at trial. Appellant's right to remain silent under the fifth amendment of the United States Constitution was clearly violated, and he was not afforded due process of law. The errors adversely affected a substantial right of appellant.

In *Richter* we said, "There is no reasonable possibility that the error made any difference in the outcome of the trial * * * and that * * * the error was harmless beyond a reasonable doubt." Here, because of the prosecutor's persistent reference to appellant's silence and the lack of overwhelming evidence, I cannot say that the error was harmless beyond a reasonable doubt, and would, therefore, agree that the case be reversed. However, I would not disturb the rule of law in Richter.

In *Richter v. State,* supra, a fair, reasonable and balanced rule of law was adopted:

> "In light of this overwhelming weight of authority, one must question this court's adherence to the rule that violation of Doyle is always prejudicial per se. Where there was but one comment at trial to the fact of defendant's silence, even though the comment was ambiguous and the evidence of guilt was overwhelming, it makes no sense to reverse a conviction. The expense to the State is substantial, not only in monetary terms, but also in terms of the amount of confidence members of society possess in the system's ability to dole out justice and protect the law-abiding citizenry. The constitutional right to silence must and should be jealously guarded; but, it is self-defeating to refuse to recognize error as harmless when it is." Id., at 1275.

In its eagerness to reverse this case, the majority used it as a vehicle to overrule Richter. Under the law of this case as carefully crafted by the majority, mistrials and reversals will result. No allowance is made for the ambiguous, innocuous or inadvertent allusion to a defendant's silence. Any harmless reference to silence now results in a mistrial or reversal.

The majority's zeal to reverse is evident and its flimsy rationale for its far-reaching holding is set out early in the opinion as follows:

> "This interrogation and these remarks by the prosecutor lead unfailingly to the conclusion that little if any attention has been paid to that which this court has said about respecting the constitutional

right of the citizen-accused to *not* have his silence called to the jury's attention. Since we overruled *Clenin v. State*, Wyo., 573 P.2d 844 (1978) in *Richter v. State*, Wyo., 642 P.2d 1269 (1982), where we held that such violations were not necessarily prejudicial and, under some fact situations, constitute harmless error, our attention has been called to far too many instances where prosecutors seem to be playing 'Russian roulette' with this impermissible practice. The game seems to be that prosecutors will take the chance and ask about or comment upon silence even though they know that these interrogations are impermissible as being in violation of the defendant's Fifth Amendment rights to the federal constitution and his Art. 1, § 11, Wyoming constitutional rights—on the theory that the supreme court will, in all probability, hold the error to be harmless. (Footnotes omitted.)

"No more."

The majority must be privy to some information that I am not aware of. I have not heard of "many instances where prosecutors seem to be playing 'Russian roulette' with this impermissible practice." Unless the majority knows something I do not know, the conclusion that prosecutors pay little, if any, attention to what this court said about constitutional rights is unwarranted and unfair to prosecutors.

I would reverse this case, but not adopt an inflexible rule of prejudice per se for harmless reference to a defendant's silence.