JUSTICE LEAPHART,
dissenting.
Although I agree with the Court’s analysis of the plain error doctrine, I dissent from the Court’s conclusion, under Issue 1, that the prosecutor’s comments about Finley’s post-arrest silence did not *151 violate his rights under Art. II, Sec. 25, of the Montana Constitution. The Court correctly cites State v. Jackson (1983), 206 Mont. 338, 348, 672 P.2d 255, 259, for the proposition that the Montana constitutional privilege against self-incrimination “affords no greater protection than that of the Federal Constitution.” Based upon the premise that Montana’s constitutional privilege against self-incrimination parallels that of the United States Constitution, the Court concludes that it is bound by the precedent of the United States Supreme Court to the effect that prosecutorial comment on pre-arrest or post-arrest (pre-Miranda) silence does not violate either the protection against self-incrimination or due process of law. Fletcher v. Weir (1982), 455 U.S. 603, 102 S.Ct. 1309, 71 L.Ed.2d 490; Jenkins v. Anderson (1980), 447 U.S. 231, 100 S.Ct. 2124, 65 L.Ed.2d 86.
While I acknowledge that the Court has correctly cited our precedent for the proposition that Montana’s privilege against self-incrimination affords no greater protection than the 5th Amendment of the U.S. Constitution, I disagree with that premise. I would overrule that line of authority and hold that Art. II, Sec. 25 of our Constitution, like Art. II, Sec. 10 (Right of Privacy) and Sec. 11 (Freedom from unreasonable searches) is independent of the U.S. Constitution and affords more protection than its federal counterpart. See State v. Sierra (1985), 214 Mont. 472, 476, 692 P.2d 1273, 1276, in which we held:
As long as we guarantee the minimum rights guaranteed by the United States Constitution, we are not compelled to march lockstep with pronouncements of the United States Supreme Court if our own constitutional provisions call for more individual rights protection than that guaranteed by the United States Constitution.
In Sierra, we relied upon the Alaska decision in Reeves v. State (Alaska 1979), 599 P.2d 727, and said: “The [Alaska] court noted as we have done before, that their state constitutional guarantee against unreasonable searches and seizures was broader in scope than the Fourth Amendment to the United States Constitution.” Sierra, 692 P.2d at 1276. See also State v. Bullock (1995), 272 Mont. 361, 901 P.2d 61 (involving Montana’s Art. II, Sec. 10, right of privacy).
We are no more compelled to “march lock-step with pronouncements of the United States Supreme Court” concerning the 5th Amendment right against self-incrimination than we are with that Court’s pronouncements concerning the 4th Amendment’s right to be free from unreasonable searches and seizures. Our decisions holding that Art. II, Sec. 25, affords no more protection than does the 5th Amendment offer absolutely no analysis in support of this proposi *152 tion. Rather, they are based upon our holding in State v. Anderson (1970), 156 Mont. 122, 476 P.2d 780. Anderson, again without any analysis or rationale, held that Montana’s 1889 Constitution, Art. III, Sec. 18, “affords a defendant no greater protection than the federal guaranty.” Anderson, 476 P.2d at 782. Anderson was decided two years prior to the adoption of our present constitution in 1972 and thus offers no guidance in determining whether the framers of the 1972 constitution intended to delegate interpretation of the Montana Constitution entirely to the nine Justices in Washington, D.C. I believe that the preferable approach to interpreting our constitutional provision is reflected in our decisions in Sierra and Bullock. That is, so long as we guarantee the minimum rights guaranteed by the U.S. Constitution, we are not only free but duty bound to interpret our parallel provisions consistently with what we determine to have been the intent of the framers of the 1972 Montana Constitution and the citizens of the State of Montana.
Based upon my view that Art. II, Sec. 25, is broader than the 5th Amendment, I would then follow the lead of the Wyoming Supreme Court in Westmark v. State (Wyo. 1984), 693 P.2d 220. In Westmark, the Wyoming court held that the right against self-incrimination under the Wyoming constitution was broader than the 5th Amendment; that Westmark’s right to remain silent was not dependent upon being advised of that right through Miranda warnings or otherwise, and, thus, a prosecutor’s comments during cross-examination and closing argument regarding Westmark’s silence violated his right to remain silent under the Wyoming Constitution. Westmark, 693 P.2d at 222-23. The Wyoming court cited its prior decision in Clenin v. State (Wyo. 1978), 573 P.2d 844, a case in which the record did not indicate whether Clenin had been advised of his rights by the law enforcement officer, for the following proposition:
The right of an accused to remain silent, however, under Art. 1, § 11 of the Constitution of the State of Wyoming, which provides: “No person shall be compelled to testify against himself in any criminal case, * * * ,” does not depend upon his being advised of that right, but exists by virtue of the constitutional language. Advice as to that right by law enforcement officers or by the justice of the peace or by the judge of the district court is only for the purpose of expanding its protection by assuring that the accused person is aware of it.
Clenin, 573 P.2d at 846. In Westmark, the Wyoming court concluded that Art. 1, § 11, of the Wyoming Constitution “brings with it the *153 implicit assurance that silence will carry no penalty and therefore it would be ‘unfair and a deprivation of due process’ to permit the defendant’s silence to be used to impeach his exculpatory testimony offered at trial.” Westmark, 693 P.2d at 222 (quoting Doyle v. Ohio (1976), 426 U.S. 610, 618, 96 S.Ct. 2240, 2245, 49 L.Ed.2d 91, 98.
Without addressing the question of pre-arrest silence, I am of the view that when, as here, a person is arrested, he becomes an “accused” and his constitutional right to remain silent and not incriminate himself is triggered regardless of whether he is advised of his rights through Miranda warnings or otherwise. I am not willing to concede that our right to remain silent does not come into play unless we have been advised of that right. To the contrary, the right not to incriminate oneself exists, not because one has been advised of the right by a law enforcement officer or government functionary, but because the right is spelled out in our constitution. As the Wyoming court points out in Westmark, advice as to the right merely expands its protection by assuring the accused person is aware of the right. The right, however, is carved in the stone of our constitution and, like the right to freedom of speech or religion, it exists regardless of our awareness or ignorance. If our citizens only have the benefit of those constitutional rights ofwhich they are aware, very few of them would enjoy any constitutional protection at all. Presumed ignorance, of course, is the very reason that Miranda warnings are required before an accused person can be interrogated.
Here, the Court concludes that since Finley voluntarily chose to take the stand, his credibility was subject to impeachment just like any other witness. While I agree that Finley’s testimony offered at trial is subject to cross-examination, I do not agree with the Court’s equating of post-arrest silence with pre-arrest silence or pre-arrest inconsistent statements as an impeachment tool. Finley’s choice to take the stand should not expose him to impeachment for having remained silent at an earlier time when he, as a post-arrest accused person, was under no obligation to speak. Post-arrest silence is very different from pre-arrest silence. As Justice Marshall pointed out in United States v. Hale (1975), 422 U.S. 171, 177, 95 S.Ct. 2133, 2136, 45 L.Ed.2d 99, 105, the circumstances surrounding an arrest lead the defendant to silence.
At the time of arrest and during custodial interrogation, innocent and guilty alike — perhaps particularly the innocent — may find the situation so intimidating that they may choose to stand mute. A variety of reasons may influence that decision. In these often emotional and confusing circumstances, a suspect may not have heard or fully understood the question, or may have felt there was no need to reply. See *154 Traynor, The Devils of Due Process in Criminal Detection, Detention, and Trial, 33 U.Chi.L. Rev. 657, 676 (1966). He may have maintained silence out of fear or unwillingness to incriminate another. Or the arrestee may simply react with silence in response to the hostile and perhaps unfamiliar atmosphere surrounding his detention.
In Doyle the United States Supreme Court held that it would be unfair to give Miranda warnings, including the right to remain silent, and then impeach the defendant at trial with the silence that was induced by the warning. Doyle, 426 U.S. 610, 96 S.Ct. at 2241. In my view, the government’s actions in arresting a person are no less of an inducement to silence than a Miranda warning, and the use of post-arrest, pr e-Miranda silence for impeachment gives rise to the same unfairness that is the basis for the Doyle rationale.
Miranda warnings are not required where a suspect is simply taken into custody. Rather, they come into play when the suspect is subjected to custodial interrogation. Rhode Island v. Innis (1980), 446 U.S. 291, 300, 100 S.Ct. 1682, 1689, 64 L.Ed.2d 297, 307. Thus, if the arresting officers wait a period of time after the arrest before giving the Miranda warnings, the suspect’s silence during that interim time period (post-arrest, pr e-Miranda) will subject him to impeachment. If police officers give the Miranda warnings at the time of arrest, which, although not legally mandated, is the standard practice, that same silence, under Doyle, can not be used to impeach. The Court’s decision herein will thus encourage law enforcement personnel to postpone the giving of Miranda warnings in order to create a period of post-arrest, pr e-Miranda silence which can be used for impeachment.
It is ironic indeed when a person can be impeached for having exercised his constitutional right to remain silent after having been arrested. I would hold that the prosecutor’s comments about Finley’s post-arrest silence violated his rights -under Art. II, Sec. 25, of the Montana Constitution and constituted prejudicial error. In light of my views on Issue 1,1 would not have to reach Issues 2 through 5. If I were to address Issues 2 through 5,1 would concur with the views expressed in the Court’s opinion.
JUSTICES TRIEWEILER and HUNT join in the foregoing dissent of Justice W. William Leaphart.